OCCIDENTAL INSURANCE COMPANY, Plaintiff in Error, *v.* JOHN L. GANZHORN *et al.*, Defendants in Error.

May 16, 1876.

1. As a general rule a party cannot, after securing the benefits of a contract with a corporation, escape its obligations by denying the existence of the corporation; nor can one who, by taking stock, voluntarily assists in the organization, afterwards refuse to pay for such stock on the ground that the corporation was not legally established. But no action can be maintained against one who, acting in good faith, was induced by fraudulent representations to give his note as stock subscriber to a sham corporation, set on foot without authority of law.

2. Where it appeared that the articles of association of an insurance company called for a capital stock of $100,000, declaring that the whole was already

taken by the original corporators; that part of the alleged subscriptions of stock were fictitious, and exhibited for the purpose of inducing *bona fide* subscriptions; that no affidavit was appended to the articles, as required by law; that, when the license was issued, the percentage required by law had not in fact been paid in, and that the stock note sued on was given by defendants in ignorance of these facts, and upon the faith of representations to the contrary, it was not error to instruct that, upon the whole evidence, the plaintiff could not recover.

ERROR to St. Louis Circuit Court.

*Affirmed.*

*Slayback & Haeussler*, for plaintiff in error, cited: Ohio & Mississippi R. R. Co. *v.* McPherson, 35 Mo. 13; Camp *v.* Bryne, 41 Mo. 529; 2 Cranch, 449; St. Louis Mutual Fire Ins. Co. *v.* Boeckler, 19 Mo. 135; Redf. on Rys., secs. 47, 49, 53, 54; White Mountain Road *v.* Eastman, 34 N. H. 124; Ang. & Ames on Corp., secs. 635, 636; Upton *v.* Hansborough, 3 Biss. 417; National Park Bank *v.* Nichols, 2 Biss. 146; Boland *v.* Whitman, 33 Ind. 65; Central Plank Road Co. *v.* Clemens, 16 Mo. 359; Stanton *v.* Wilson, 2 Hill, 154; Chester Glass Co. *v.* Dewey, 16 Mass. 94; Sawyer *v.* Hoag, 17 Wall. 610; State *v.* Kupferle, 44 Mo. 154; New Haven & Derby R. R. Co. *v.* Chapman, 38 Conn. 56; Schaeffer *v.* Missouri Home Ins. Co., 46 Mo. 248.

*H. B. Lighthizer*, for defendants in error, cited: Old-town & Lincoln R. R. Co. *v.* Veazie, 39 Me. 572; Ang. & Ames on Corp. 66, sec. 83, p. 537, sec. 531, p. 829, sec. 779; Fire Department *v.* Kip, 10 Wend. 266; First Baptist Society *v.* Rapalee, 16 Wend. 605; Central Plank Road Co. *v.* Clemens, 16 Mo. 359; Ohio & Mississippi R. R. Co. *v.* McPherson, 35 Mo. 13; Smith *v.* Heidecker, 39 Mo. 157; Welland Canal Co. *v.* Hathaway, 8 Wend. 483, 484; Kansas City Hotel *v.* Harris, 51 Mo. 465; Camp *v.* Bryne, 41 Mo. 535; Bales *v.* Perry, 51 Mo. 449, 453; Columbia Bottom Levee Co. *v.* Meier, 39 Mo. 57; Rockville & Washington Turnpike Road *v.* Van Ness, 2 Cranch, 449; Moore *et al. v.* Whitcomb, 48 Mo. 546; Powell *v.* North Missouri R. R. Co., 42 Mo. 65.

LEWIS, J., delivered the opinion of the court.

Defendant Ganzhorn subscribed for twenty-five shares of the capital stock of plaintiff, at the par value of $100 per share, paid 10 per cent. of the amount in cash, and gave a negotiable promissory note, in the ordinary commercial form, payable on demand, and signed by himself and his co-defendant, for $2,250, the residue. The petition sets forth that plaintiff's board of directors had, from time to time, ordered certain assessments on defendants' said stock-note, amounting in all to $875, for which sum, with interest, plaintiff prayed judgment. It is also alleged that plaintiff is a corporation created under the act concerning corporations, approved March 19, 1866. Defendants' answer admitted the stock subscription and the execution of the note, but denied that plaintiff was, or had ever been, a corporation, as alleged. It denied that any assessments were ever made, as stated, and charged that the stock of the pretended corporation was a sham and a fraud from the beginning; that certain persons, mentioned by name, had falsely represented themselves as duly organized in an incorporated association, and fraudulently offered to sell stock to the public in said pretended corporation; that all the acts done by said association, in pretended compliance with the statutes concerning corporations, were "utterly void in law, and of no effect;" that the defendants had no part in the so-called organization of said company, nor any participation in the same, or profit from its business; that defendant Ganzhorn's subscription, and the execution of said note, were induced by the fraudulent representations of said associated persons, and after the said pretended organization, and without any notice or knowledge of its false and fraudulent character. Plaintiff's reply denied all the allegations in the answer, of new matter. The cause being tried before the court, sitting as a jury, the issues were found for the defendants.

Two questions are material to the determination of this

cause:    (1) Could the defendants be permitted, in defend-
ing against a note executed by them to a named corpora-
tion, to deny the payee's corporate existence? · (2) If such
denial was allowable, did the plaintiff fail to prove itself a
corporation duly created according to law?

1. Plaintiff's counsel rightly states the general rule that
a party cannot, after contracting with a corporation, as such,
and securing to himself the benefits of the compact, escape
its reciprocal obligations by denying the existence of the
other contracting party.    Nor can one who, by taking stock,
or otherwise, deliberately aids in the formation and intro-
duction of a pretended corporation, not legally authorized
or created, assert such illegal or unauthorized origin against
his voluntary undertaking to pay for the stock subscribed.
But fraud vitiates every obligation or undertaking whose
supposed basis of good faith and fair understanding of the
facts is found to have been illusory.    Hence it is declared
that, "Where a charter has been obtained by means of
fictitious subscriptions for part of the stock, and a fraud has
been committed on a *bona fide* subscriber, by which he has
either sustained or might sustain injury, no action can be
maintained against him by the corporation for the amount
of his subscription, unless such subscriber has accepted the
charter, and by his *own acts* has assisted in putting it in
operation."    Ang. & Ames on Corp., sec. 531 ; *Center T.
R. Co.* v. *McConaby*, 16 Serg. & R. 140.    In *Central Plank
R. Co.* v. *Clemens*, 16 Mo. 365, where a similar question
was under consideration, Judge Gamble said :    "In the
present case, *as it stands admitted* upon the record that
the defendant has assisted in the organization of this com-
pany, he will not be permitted to escape the duty he
assumed when he subscribed for the stock, upon the ground
that the company was not organized in strict conformity to
the law."

In the case now before us the answer distinctly avers
every fact which these authorities declare requisite for open-

ing the way to a denial by the defendants of the plaintiff's corporate existence. It only remained to sustain the averments by their proofs.

Plaintiff exhibited in evidence its license, bearing date June 13, 1866, issued by the secretary of state under section 4, chapter 74, of the " act concerning private corporations," approved March 19, 1866, which recited that the ten corporators therein named had duly filed their articles of association, verified by the affidavit of over three of the persons signing the same ; that one-half of the capital stock of said company had been in good faith subscribed, and $5,000 thereof paid in by the persons subscribing therefor. The license recited full compliance with the law in other particulars, and thereupon declared the corporators and their successors to be a body politic and corporate, by the name and style of " Occidental Insurance Company of St. Louis, Mo.," etc. Other testimony was introduced by plaintiff, tending to prove the organization and operations of the company, with the making of the several assessments set forth in the petition.

Defendants introduced in evidence an officially certified transcript of the plaintiff's articles of association, from which it appeared that the capital stock of the company was $100,000, divided into shares of $100 each ; that the whole of said stock was then already subscribed by the ten corporators, who each took 100 shares, or $10,000 thereof. It appeared from this transcript that no affidavit was in fact filed with the original, as stated in the license, but that, instead thereof, an ordinary certificate of acknowledgment was appended by a notary public, in the form used for deeds and conveyances. Defendants introduced further testimony tending to prove that a considerable number of the alleged stock subscriptions were fictitious—were never intended to be enforced, and were exhibited for the sole purpose of inducing *bona fide* subscriptions by other parties. That, when the license was issued, the sum of $5,000, as

required by the statute, had not been paid by the subscribers, real or pretended, and that not exceeding $4,500 was ever so paid at all; that defendant Ganzhorn had been deceived into his subscription of stock and execution of the note sued on, by the fraudulent misrepresentations of the parties managing the company, long after its organization, and without any knowledge or suspicion of its unsoundness in law and in fact.

At the close of the testimony the court, of its own motion, declared the law to be that, upon all the evidence in the case, the plaintiff was not entitled to recover. Plaintiff asked for several declarations of law, which were refused. The three first, in effect, asserted defendant Ganzhorn's incompetency, as a stock subscriber, to deny the plaintiff's legal existence, in order to avoid liability upon his subscription and note, or to impeach the validity or regularity of the company's organization and subsequent proceedings. The element of possible fraud committed upon the defendant being ignored in these instructions, there was no error in refusing them. The fourth instruction assumed the existence of an affidavit attached to the articles of association, and was therefore inadmissible. The fifth, upon certain hypotheses which were unobjectionable, declared that, unless the court believed, from the evidence, "that the said 25 shares of stock were unauthorized by law, and that plaintiff is not now in fact, and never was, a body corporate, and *the stock thereof* was and is a sham and a fraud, issued with intent to deceive and defraud defendant," then the plaintiff was entitled to recover, etc. This was objectionable, as requiring too much of the defendant to sustain his defense. It was sufficient for him to show, as already explained, that merely a part of the stock was fictitious, if that was effectual to mislead him. But, apart from this verbal inexactness, it is manifest that the refusal of the instruction operated no harm to the plaintiff's case. The court's finding upon the facts, as gathered from its treatment of instructions offered on either

side, make it evident that, had the instruction been given, the result would have been the same. The sixth and seventh instructions offered by plaintiff were also objectionable in the presentation of hypotheses of fact upon which it was assumed the defendants would be estopped and the plaintiff entitled to recover, and which yet ignored all the features of misrepresentation, etc., made essential, by the testimony, to any fair statement of the case. It may be said of these instructions, also, that from the general course of the testimony, and its evident impression upon the court, there would be no ground for reversal, even if it could be shown that they ought to have been given. The finding was manifestly for the right party, upon any view of the theories they suggested.

The court, upon defendants' application, declared the law to be that, "if it appear from the evidence that $50,000 had not been in good faith subscribed to the capital stock of the Occidental Insurance Company, and $5,000 thereof actually paid in cash at or before the organization of the company, then the judgment must go for the defendants." This was the only instruction asked for by defendants, and was properly given, as already appears.

Many exceptions were saved by plaintiff upon the court's rulings in admitting or excluding testimony. In all cases, however, the action of the court was conformable with the principles applied to the instructions, and herein approved. Plaintiff's counsel has preserved and presented here every point, apparently, that could possibly be made in his client's behalf; but, upon a careful examination of them all, we are unable to discover any available error in the proceedings below. All the judges concurring, the judgment is affirmed.