THE SEDALIA, WARSAW & SOUTHERN RAILWAY CO., Respondent, *v.* DANIEL T. ABELL, Appellant.

### May 11, 1885.

1. SUBSCRIPTION TO STOCK—POWER OF ASSESSMENT—DEPENDENT ON AGREEMENT AS TO TERMS OF SUBSCRIPTION.—It is well settled that when the capital stock and number of shares are fixed by the act of incorporation, no assessment can be lawfully made on the share of any subscriber until the whole number of shares have been taken. It is also settled law that when, by the articles of association or by the provisions of the statute which form a part of the agreement of the parties who signed the articles of association, it is expressly or impliedly provided that upon the subscription to the capital stock of any certain amount *less than the whole* amount fixed by the articles of association, the corporation shall have power to enter upon the business for which it was organized, that *then* a valid assessment may be made when *that* (the less amount) amount has been subscribed.—*R. R. Co.* v. *Gould*, 2 Gray 278.

2. SAME.—CONSTRUCTION OF SECTIONS 711, 764, AND 766 OF REVISED STATUTES OF MO., 1879.—The provisions of sections 711, 764 and 766 of the Revised Statutes of this state (1879) contemplate the organizing of associations upon the subscription of an amount *less than the whole;* and no construction can be made of these provisions to authorize the *holding* that the existence of the corporation after the filing of the articles of association, was a limited and incomplete existence, and that its powers and privileges were confined to the making of a preliminary organization and the receiving of subscriptions for the amount of the capital stock remaining unsubscribed, precedent to the completion of its corporate existence by the additional subscription, and precedent to the possession by it of the full powers and privileges conferring

upon it the authority to enter upon the work for which it was created, to be given by the additional subscriptions. On the contrary *we hold* that, that upon the filing of the articles of association in compliance with the provisions of the statute, the corporate existence was complete, and the corporate powers and privileges therefore conferred upon it are full and complete. Following *Central Plank Road Co.* v. *Clemens*, 16 Mo. p. 364.

3. SAME—SUBSCRIPTION NOT MADE PREVIOUS TO FILING OF ARTICLES AS A DEFENCE BY SUBSCRIBER NOT TENABLE.—Although a company organizing under these statutes may have failed to have subscribed the requisite amount to its capital stock previous to the filing of its articles of association, this will not avail a subscriber to the stock as a defence, especially when it does not appear that such subscription was not made previous to making the assessment against him. The state may complain of the want of such subscription, but the subscriber to stock can not.—*Home Ins. Co.* v. *Sherwood*, 72 Mo. 464. Neither can he complain of the failure of the payment of five per cent. to the directors, for the same reason. Nor can he complain of the failure of payment of five per cent. to the directors by those subscribing *subsequently* to the filing of the articles of association; such failure would only invalidate or avoid the subscription at the option of the company. The provision is for the benefit of the company.

APPEAL from Pettis County Circuit Court, HON. JOHN P. STROTHER, Judge.

*Affirmed.*

The facts are sufficiently stated in the opinion of the court.

WILKERSON & MONTGOMERY, for appellant.

I. It is a well settled principle, that unless expressly authorized by the statute, the taking up of the entire capital stock, as fixed by charter or by statute, is a condition precedent to the liability of subscribers to pay assessments for the general purposes of the corporation.— Pierce on Railroads (2 ed.) p. 52 and cases cited ; *Allman* v. *Havana & G. R. R. Co.*, 88 Illinois 521 ; Field on Corp'n, 95 ; Brice's Ultra Vires, 105, 72 ; *Taggart* v. *Western N. Y. R. R. Co.* 24 Md. 584 ; 1 Redfield on Railways, 176 ; *R. R.* v. *Cushing* 43 Maine 531 ; 76 Penn. State 310. There is nothing in our statutes which takes railroads from under this well-established rule, who get all their rights and powers from the statute.—Morawetz on Corp. sect. 149 ; *Thomas* v. *R. R.* 101 U. S. 82.

II.   The provisions of our statutes ( sections 764, 769 and 711 ) instead of exempting corporations from the well-established rules of the common law, as applied to all contracts, *require* a full compliance with them.   The requirements should be construed as mandatory ; the provisions protect subscribers against the snares and pitfalls of corporation promoters, in which many have been entrapped.

III.   The fact that many railroads have been organized in this state upon the construction of, the statute contended for by respondent is no argument in their favor ; on the contrary it should be taken from the common experience of the people of this state as the weightiest argument against it.

IV.   No more glaring instance can be found in the history of railroads in this state than the one shown by the record in this cause.   A railway corporation is organized and procures its charter without even obtaining the statutory 500 dollars a mile, or paying in the 5 per cent. of that.   It fixes its capital stock at 220,000 dollars, and opens a subscription in all of less than 100,000 dollars, undertakes to give all the balance of the stock and bonds for twice the value of the road to a very small "credit mobilier" to construct it.

V.   The failure of the corporation to collect the 5 per cent. required by the statute is fatal to the validity of the subscription.—*R. R. Co.* v. *Van Horn*, 57 N. Y. 477; *Turnpike Co.* v. *Henderson*, 8 Serg. & R. 219 ; *Bucher* v. *R. R. Co.*, 76 Penn. St. 306 ; *Taggart* v. *R. R. Co.*, 24 Md. 593; *Fisee* v. *R. R. Co.*, 32 Miss. 359 ; *Nelson* v. *Blakely*, 47 Ind. 38; *People* v. *Chambers*, 42 California 208.

WILLIAM L. SHIRK, for the respondent.

I.   By reference to appellant's statement and brief it will be seen that no complaint is made now against the action of the court below in striking out any part of his answer, except only that part which avers that the *entire amount of capital stock* was never subscribed and that 5 *per cent.* of such subscriptions as were made, were

*not paid in before the filing of the articles of associa-
tion.*

II.   A stockholder when sued upon a call, will not be
permitted to deny the existence of the corporation, nor
the legality of its incorporation, as for instance that a
sufficient amount of stock per mile had not been sub-
scribed before its articles of association were filed.—1
Redfield on Railways, p. 71, par. 4 and note 4 ; *Randel* v.
*Hay*, 32 Cal. 354 ; *Baker* v. *Backus*, 32 Ill. 79 ; *Charles
Riv. Bridge* v. *Warren Bridge*, 7 Pick. 344 ; *Society,
etc.*, v. *Commonwealth*, 52 Penn. St. 125.   This principle
is fully recognized in Missouri.—*Sheewalter* v. *Pernee*, 55
Mo. 218 ; *Thornton* v. *Nat. Bk.*, 71 Mo. 221.   Neither can
a stockholder when tried upon a call, defend on the
ground that certain parts of its stock was subscribed
for by insolvent persons—known to be by the agents
of the corporation.   Nor that certain of its officers became
members of a Construction Co. and violated their trust.—
*Parker* v. *Thomas*, 19 Ind. 213 ; *Goodrich* v. *Reynolds*,
31 Ill. 490 ; *Hana & Ralls, etc.*, v. *Winnifee*, 25 Mo.
549.

III.   The defence—that the subscribers to the capital
stock did not, prior to the filing of the articles of associa-
tion, pay to the directors 5 per cent. on the amount of
their subscription, was rightly stricken out.   The statute
does not require ( sect. 966, Rev. Stat., 1879 ) that each
subscriber at the time of subscribing shall pay 5 per cent.
on the amount of his subscription, but only that the
articles shall not be filed until 500 dollars per mile for
every mile proposed to be built, shall have been sub-
scribed and "5 per cent. paid thereon in good faith and
in cash to the directors of such corporation."  This per
cent. is to be computed on the aggregate.—*R. R. Co.* v.
*Mason*, 16 N. Y. 457 ; *R. R. Co.* v. *Dunklin*, 28 Mich.
130.   But in any event this cannot avail defendant.
Only the state can complain of it by a direct action.

IV.   The final defence is :   That no assessment or call
could be made, until the *entire capital stock* authorized
by the articles of association had been subscribed.   The

authorities cited do not sustain their position, *under the statutes of this state.* The statutes in Illinois and Michigan are materially different from ours, and are much more restricted in policy.

V.   If the answer had avowed that the full stock had been taken by issuing the remaining shares fully paid up to the Construction Co., in part payment of its contract price for building the road, the averment would have shown that all the stock was legally taken.—28 Penn. St. 318. As it only averred fraudulent contract of *some officers* and that such issue was fraudulent, it was properly stricken out.—25 Mo. 547.

Opinion by HALL J.

The plaintiff is a railroad corporation organized under the Revised Statutes of this state, in the year 1879.   The defendant is one of the subscribers to the articles of association for two shares of the capital stock of $100 per share, and this action is brought to recover the amount of such subscription.   Judgment was rendered by the circuit court in favor of plaintiff, and the defendant has appealed therefrom to this court.   The only questions presented for our determination are questions arising by reason of the action of the circuit court in striking out, on motion of plaintiff, a certain part of defendant's answer.   It is urged by defendant that such action of the circuit court was erroneous, for reasons which will be discussed under the points following.

### I.

The defendant contends that the defence set up in that part of the answer stricken out, that the whole amount of the capital stock of the railroad company, as fixed by its articles of association, had not been subscribed at the time of the assessment made against defendant, was a good and valid defence to this action.

It is undoubtedly true, as said in *Stoneham Branch R. R. Co. v. Gould* (2 Gray 278), that "it is a rule of law too well settled to be now questioned, that when the capital stock and number of shares are fixed

by the act of incorporation no assessment can be lawfully made on the share of any subscriber until the whole number of shares has been taken." This rule of law is so well settled that it is unnecessary to cite the very numerous cases and text books in which it is recognized and laid down.

The reason of this rule of law is at once plain and convincing, and upon the statement of the reason in the leading case above quoted no improvement has ever been made. It is there said : "This is no arbritary rule ; it is founded on a plain dictate of justice and the strict principles regulating the obligation of contracts. When a man subscribes a share to a stock, to consist of one thousand shares, in order to carry on some designated enterprise, he binds himself to pay a thousandth part of the cost of such enterprise. If only five hundred are subscribed for, and he can have no assurance, which he is bound to accept, that the remainder will be taken, he would be held, if liable to assessment, to pay a five hundredth part of the cost of the enterprise besides the risk of an entire failure itself, and the loss of the amount advanced towards it." It will thus be seen that this well known rule of law is founded upon "the strict principles regulating the obligation of contracts."

But in connection with this well-established rule of law there must not be forgotten this other rule of law founded in reason and authority, that when by the articles of association, or by the provisions of the statutes, which, as in this case, form a part of the agreement of the parties who signed the articles of association, it is expressly or impliedly provided that, upon the subscription to the capital stock of any certain amount less than the whole amount fixed by the articles of association, the corporation shall have power to enter upon the business for which it is organized, that then a valid assessment may be made after that amount has been subscribed.

In other words if the subscribers to the articles of association of a projected corporation bind themselves to pay the amount subscribed, only when the entire capital

stock shall be subscribed, then no valid assessment can be made until the entire capital stock has been subscribed, but if the subscribers agree to pay the amount subscribed when a certain amount of the capital stock less than the entire capital stock shall be subscribed, then a valid assessment can be made when that certain, agreed-upon amount has been subscribed. The only difficulty always is to ascertain what the agreement of the parties is. The agreement of the parties in this case depends upon the construction of sections 711, 764, and 766 of the Revised Statutes, since the plaintiff was organized under the general statutes of the state.

The plaintiff is a narrow gauge railroad company. Section 764 provides for the organization of companies by articles of association, "in which shall be stated the name of the company, the number of years the same is to continue, the places from and to which the road is to be constructed or maintained or operated, the length of such road, as near as may be, and the name of each county in the state through or into which it is made or is intended to be made, the amount of the capital stock of the company, which shall not be * * * less than five thousand dollars for every mile of narrow gauge road constructed or proposed to be constructed, and the number of shares of which said capital stock shall consist, and the names and places of residence of the directors of the company, not less than five nor more than thirteen in number, who shall manage its affairs for the first year, and until others are chosen in their places. Each subscriber to such articles of association shall subscribe thereto his name, place of residence, and the number of shares of stock he agrees to take in said company. On compliance with the provisions of section 766 such articles of association may be filed in the office of the secretary of state, who shall endorse thereon the day they are filed, and record the same in a book to be provided for that purpose, and thereupon the persons who have so subscribed such articles of association, and all persons who shall become stockholders in said company *shall be a*

*corporation* by the name specified in such articles of asso-
ciation, and *shall possess the powers and privileges
granted to corporations* and be subject to the provisions
relating thereto contained in this chapter.

Section 766 provides that: "Such articles of association
shall not be filed and recorded in the office of the secre-
tary of state,   *   *   *   until at least five hundred dol-
lars of stock for every mile of narrow gauge railroad pro-
posed to be made, is subscribed thereto, and five per cent.
paid thereon, in good faith and in cash, to the directors
named in said articles of association, nor until there is
endorsed thereon, or annexed thereto an affidavit, made
by at least three of the directors named in said articles,
that the amount of stock required by this section has been
in good faith subscribed, and five per cent. paid in cash
thereon, as aforesaid, and that it is intended, in good
faith, to construct or maintain and operate the   *   *   *
road mentioned in such articles of association."

By these sections, we firmly believe that a compliance
with the provisions of section 766 alone was required as
to the amount of the subscription to the capital stock of
plaintiff in order to have the articles of association filed
in the office of the secretary of state, and that upon the
plaintiff becoming thereby, as provided by section 764,
"a corporation by the name specified in such articles of
association," it possessed "the powers and privileges
granted to corporations," including the power to enter
upon the work for the doing of which plaintiff was created,
and the authority to make assessments for the purpose of
prosecuting such work; unless indeed the provisions of
section 711 of article 1 of the Revised Statutes, concern-
ing the general powers, duties and liabilities of corpora-
tions, require a different construction to be made of the
two sections first mentioned.   Section 711 simply pro-
vides that: "When such articles of association and affida-
vit are filed in the office of the secretary of state, the
directors named in the articles of association may, in
case the whole of the capital stock is not before sub-
scribed, open books of subscription to fill up the capital

stock of the company, in such places and after giving such notice as they may deem expedient, and may continue to receive subscriptions until the whole capital stock is subscribed." We do not believe that such a construction can be made of these provisions, in connection with the provisions of sections 764 and 766, as to enable us to say that the existence of plaintiff as a corporation after the filing of the articles of association in the office of the secretary of state was a limited and incomplete existence, and that its powers and privileges were confined to the making of a preliminary organization and the receiving of subscriptions for the amount of the capital stock remaining unsubscribed, precedent to the completion of its corporate existence by the additional subscriptions, and precedent to the possession by it of the full powers and privileges conferring upon it the authority to enter upon the work for which it was created, to be given by the additional subscriptions. We are convinced that the corporate existence of plaintiff upon the filing of the articles of association in compliance with the provision of the section 766 was complete, and that the corporate powers and privileges thereby conferred upon it were full and complete and not limited.

And we hold that the circuit court properly struck out so much of the answer as set up the defence considered under this point. Without reviewing the numerous authorities upon this question we deem it sufficent to say that our conclusion is supported by *Jewett* v. *R. R. Co.* (34 Ohio St. 607); *Emmitt* v. *R. R. Co.* (31 Ohio St. 26); *R. R. Co.* v. *Preston* (35 Iowa 118); *Livesey* v. *Omaha Hotel Co.* (5 Neb.) and the authorities in these cases cited; and by Roer on Railroads, vol. 1 p. 49.

We, however, particularly mention the two cases following. In the *Resselar and Washington Plank Road Company* v. *William Barton* (16 N. Y. 459), upon a statute with which ours is in every substantial respect the same it is said "another objection taken by the defendant's counsel is, that it appears from the complaint that the whole capital of $50,000 had not been subscribed. It

is expressly provided by the act that "when stock to the amount of at least five hundred dollars for every mile of the road should" have been in good faith subscribed, the association might be organized and when five per cent. on this amount had been paid in, the incorporation might be perfected. These provisions afford a sufficient answer to this objection, as they evidently contemplated that the corporation may go into operation before the whole nominal amount of its stock is subscribed. In *Hoagland* v. *R. R. Co.* (18 Indiana 455), the court said : Thus the law provides for the organization of the company when 50,000 dollars shall be subscribed to its stock (let the amount of capital stock be what it may ), and for the exercise of its corporate franchises, as well as for the calling in of amounts subscribed. The contract of subscription must be deemed to have been made with a view to the law and the right of the company to call in such subscriptions ; and it would seem to be clear that a subscription for the whole amount of the capital stock fixed upon can not be a condition precedent to the right of the company to collect subscriptions.

This conclusion may appear in conflict with certain authorities cited by the defendant, but the conflict is more apparent than real, and a study of those authorities will show that they are based upon no denial of the proposition of law herein stated but are wholly founded upon statutes which are materially different from the statute under consideration in this case. Our conclusion is fortified also by the opinion of our own Supreme Court, delivered by Judge Gamble, in the case of *Central Plank Road Company* v. *Clemens* ( 16 Mo. 364), wherein it is said ."when the act is complied with, and a copy of the articles of association filed in the recorder's office, the incorporation is *complete*."

## II.

The defendant contends that the defence set up in the part of the answer stricken out, that the plaintiff was required, by the provisions of the statute above referred

to, to have subscribed in good faith by the subscribers to its articles of association, *previous to their filing in the office of the secretary of state*, to its capital stock $500 for every mile of road proposed to be built, and that the amount of such required subscription was $21,000, and that stock. to the amount of only about $10,000 was so subscribed previous to the filing of the articles of association in the office of the secretary of state, is a good and valid defence to this action.

This defence is based on the failure of plaintiff to have subscribed the requisite amount to its capital stock previous to the filing of its articles of association.   This defence is not founded upon the want of subscription of such amount to its capital stock previous to the making of the assessment against defendant, and in the answer it is not alleged that the subscription of such amount of stock was not made previous to the making of such assessment against defendant. The only question presented under this point then is, whether the fact that such subscription of such amount was not made previous to the filing of the articles of association is a good defence to this action—whether such fact invalidates the assessment against defendant.   We do not think that the defence is tenable.   The state may complain of the want of such subscription so far as it concerns the rights of plaintiff to file the articles of association in the office of the secretary of state ; but the defendant can make no such complaint. —*The Home Stock. Ins. Co.* v. *Sherwood*, 72 Mo. 464.

### III.

The defendant insists that the defence, contained in that part of the answer stricken out, that the subscribers to the plaintiff's articles of association did not previous to the filing of said articles in the office of the secretary of state, pay "the amount of five per cent. in cash in good faith" to the directors of plaintiff, is a good defence to this action.

If by this defence it is meant that the subscribers should have each paid five per cent. on the amount subscribed

by them then clearly the defence is insufficient. The requirement of the statute is not, that five per cent. on each separate share subscribed be paid before the filing of the articles, but that five per cent. on the aggregate amount so subscribed be paid, whether by one or another.—Roer on Railroads, vol. 1, p. 49; *R. R. Co.* v. *Mason*, 16 N. Y. 451.

If however it be meant by said defence that the five per cent. on the amount subscribed was not paid at all prior to the filing of the articles of association, then we think the defence untenable, for the reason assigned by us under the second point for holding the defence thereunder discussed insufficient. The defendant can not complain of the lack of such payment.—*The Home Stock Ins. Co.* v. *Sherwood*, 72 Mo. 464.

## IV.

The defendant complains of the striking out by the circuit court of so much of the answer as set up as a defence to this action, the failure of those subscribing to the plaintiff's capital stock, subsequent to the filing of the articles of association in the office of the secretary of state, to pay the directors of plaintiff, at the time of subscribing, five per cent. in money on the whole amount subscribed. The defendant in support of his position on this point urges that such a failure on the part of such subscribers, by force of the provisions of section 711, rendered such subscriptions absolutely void. In support of the position there are authorities entitled to much weight and consideration, but we are convinced that against this position there is at least equal authority, and that there is stronger reason. We think the correct rule of law on this question to be this, that the entire omission on the part of the subscriber to make the advance payment of five per cent. will not absolutely avoid his subscription, but that it will do so only at the option of the company.

The provision of the statute requiring the advance payment is intended for the benefit of the company and not for the benefit of the subscriber who fails to make such payments.

. Moreover the subscriber who fails to make such payment will not be permitted to take advantage of his own wrong in so failing.—Roer on Railroads, vol. 1, p. 104 ; *Piscataqua Ferry Co.* v. *Jones*, 39 N. H. 501 ; *Wight* v. *R. R. Co.*, 16 B. Mon. 4; Thompson's Liability of Stockholders and the cases cited.

## V.

The defence contained in that part of the answer stricken out, based upon the misconduct of plaintiff's officers in contracting with a Construction Company, of which plaintiff's said officers were members for the construction of plaintiff's railroad, has apparently been abandoned in this court. That such defence to this action is untenable is clearly established by the decision of our own Supreme Court in the case of *Hannibal, etc., Plank Road Co.* v. *Menefee*, 25 Mo. 548.

The judgment of the circuit court is affirmed. All concur.