MARY T. CLARK, Appellant, v. THOMAS H. BARNES, Respondent.

St. Louis Court of Appeals, September 18, 1894.

1. **Foreign Law**: PRESUMPTIONS. It can not be presumed that the common law is in force in a state like Arkansas, which, prior to its admission to the union, was not subject to the laws of England. In the absence of proof of the laws of such a state, rights governed by them will be determined by our own law.

| | |
|---|---|
| 58 | 667 |
| 77 | 105 |
| 150m | 540 |
| 58 | 667 |
| 154m | 628 |
| 58 | 667 |
| 88 | 458 |

2. **Promissory Notes:** NEGOTIABILITY. A note, which contains a provision for the payment of attorney's fees incurred in the collection of it, is non-negotiable.

3. **Corporations:** ENFORCEMENT OF SUBSCRIPTIONS FOR STOCK PROCURED THROUGH FRAUD. When the charter of a corporation has been obtained by means of fictitious subscriptions for part of the stock, and a fraud has been committed on a *bona fide* subscriber, by which he either has sustained or may sustain injury, no action can be maintained against him by the corporation for the amount of his subscription, unless he has accepted the charter and by his own acts has assisted in putting it in operation.

4. **Enforcement of Subscription for Stock of Illegal Organization.** A corporation, illegally organized, can not collect a subscription for stock from a member who is not estopped by his acts from invoking such illegality as a defense.

*Appeal from the Greene Circuit Court.*—J. T. NEVILLE, Judge.

AFFIRMED.

*Wolf & Bowden* for appellant.

*Heffernan & Buckley* for respondent.

BOND, J.—Suit by indorsee against the maker on the following note:

"$500        FORT SMITH, ARK., March 6, 1891.

"On the first day of May, 1892, I promise to pay to the order of R. L. Duvall five hundred dollars, for value received, negotiable and payable without defalcation or discount at the Merchants' Bank, Fort Smith, Arkansas, with interest from date at the rate of eight per cent. per annum until paid.

"And in the event payment is not made at maturity, further agree to pay the attorney's fees, court costs, and all other expenses incurred in enforcing the collection of this note and its interest, or any part that may remain due and unpaid.

"[Signed]        THOMAS H. BARNES."

At the trial plaintiff waived all claim for any recovery beyond the note and interest.

Defendant answered:

*First.* The execution of the note in the state of Arkansas and that same was payable there, and denies the jurisdiction of the court over him.

*Second.* That said note was given to one Duvall for shares of stock in a pretended Arkansas corporation, which was designated as the Indian Territory Hedge Company; that said hedge company was formed for the purpose of promoting and selling what was represented as a patent hedge fence; that said corporation did not comply with the laws of Arkansas in its organization, and never became a body corporate; that it issued stock in violation of the laws of that state, various provisions of the constitution of which are set forth.

*Third.* That, when promoting said organization, Duvall claimed to have patents for the said hedge fence and that his rights therein covered the territory in which it was to be sold, which defendant says was untrue.

*Fourth.* That no consideration passed from Duvall to defendant for said note, because no such hedge fence as Duvall was selling could be built or maintained, — that same was worthless.

*Fifth.* That under the laws of Arkansas the note sued on is not a negotiable note, nor is it negotiable under the laws of Missouri.

*Sixth.* That, even if said corporation had been duly formed under the laws of Arkansas, the value of said corporation, its franchises and its stock, would consist only in the planting, growth and use as a fence of the said hedge which Duvall was offering; that it had no value within itself and was remunerative only when managed and worked properly, even though

the same had been capable of growth and use, which defendant denies; that Duvall, in order to induce the defendant to take said stock, made false and fraudulent representations to him concerning the business, its management and the profits arising therefrom; that he, Duvall, was to furnish a manager to promote the interests of said corporation, and put $1,000 in cash in the treasury for that purpose, and furnish office stationery, etc., and he and his associates were to take full management thereof, none of which said Duvall did.

*Seventh.* That said Duvall never made any deeds for said patent to said pretended corporation, and said corporation never acquired any title thereto.

*Eighth.* That plaintiff is not the real and *bona fide* holder of said note, but that same belongs to said Duvall; that plaintiff took said note with full knowledge of all the facts set out in this answer, and for the purpose of claiming to be an innocent holder of the same; that the capital stock of said corporation was not *bona fide* subscribed; that defendant did not know that said corporation was not properly organized and that said hedge fence was worthless, and that the representations of Duvall were false and fraudulent.

The reply was a denial of all the averments of the answer, except the admission of the execution of the note.

The evidence proves that the note sued on was an Arkansas contract, and was given in payment of certain shares in a corporation known as the Indian Territory Hedge Company, which was attempted to be organized contrary to the laws of Arkansas, and which issued stock in violation of the constitution of that state. There was some evidence that the subscription of defendant to the stock in question was induced by fraudulent representations made by one Duvall, the

promoter of the enterprise and the payee of the note in suit. The evidence also proves that plaintiff had $5,000 worth of notes, for which she paid $3,500; that she exchanged these notes for others, including the one in suit; that at the time of this exchange she knew that both sets of notes were given for stock in the hedge business.

The court sitting as a jury found the issues for defendant and rendered judgment in his favor, from which the present appeal was taken.

The note sued on in this case was by its terms executed and to be paid in the state of Arkansas. It was, therefore, a contract subject to the laws of that state. The only evidence contained in this record of the laws of that state, pertaining to bills of exchange or negotiable promissory notes, is contained in an isolated section of the digest of the laws of Arkansas, to wit:

"Sec. 476. Nothing in the preceding section shall apply to a bill of exchange or negotiable promissory note transferred in good faith and for value before maturity; *but such instruments shall be governed in all respects by the rules of the law merchant concerning commercial and negotiable paper.*" Mansfield's Digest, chap. 14, p. 248, sec. 476.

It is obvious that the above section of the Arkansas statutes throws no light on the question of the negotiability of a promissory note, containing the provisions with reference to the payment of attorney's fees, court costs and other expenses of collection, which are inserted in the note in suit.

There is no proof of the Arkansas decisions, cited in appellant's brief, preserved in the record. We do not take judicial cognizance of the decisions of sister states.

Where the cause of action stated, or the defense made, *rests* upon the law of another state, that law

should be both pleaded and proved. Where the foreign law is not the basis of the action or defense but is merely an evidential part thereof, it may be proved without being pleaded. *Banchor v. Gregory*, 9 Mo. App. 102. In the case at bar the law of Arkansas governing the negotiability of a note, containing a provision like the one quoted *supra*, is neither pleaded nor proved.

The state of Arkansas was a part of the acquisition of territory, by the Louisiana purchase, from France. Prior to becoming a member of this Union, it was never subject to the laws of England. We can not, therefore, presume that the common law is in force in Arkansas, and, in the absence of proof of its law, we must apply the law of this state to the determination of the contract expressed in the note in suit. *Flato v. Mulhall*, 72 Mo. 522; *Bain v. Arnold*, 33 Mo. App. 631; *Hofheimer v. Losen*, 24 Mo. App. 652.

That a note containing a clause providing for the payment of attorney's fees is thereby rendered non-negotiable, is the settled law of this state. *Bank of Carthage v. Marlow*, 71 Mo. 618; *Samstag v. Conley*, 64 Mo. 477; *Bank v. Gay*, 63 Mo. 33.

It has also been held by this court that "where a charter has been obtained by means of fictitious subscriptions for part of the stock, and a fraud has been committed on a *bona fide* subscriber, by which he either sustained, or might sustain, injury, no action can be maintained against him by the corporation for the amount of his subscription, unless such subscriber has accepted the charter, and by his *own acts* has assisted in putting it in operation." *Insurance Co. v. Ganzhorn*, 2 Mo. App. 208.

Neither can a corporation, illegally organized, collect the amount of his subscription from a member who is not estopped by his acts from making the defense of

Clark v. Barnes.

a want of a corporate existence. *Haskell v. Worthington*, 94 Mo. 560.

Tested by these principles, the defendant in this case, on the undisputed facts showing his good faith in making the subscription of stock for which he gave the note in suit, and establishing the fact that the corporation was thereafter organized in contravention of the laws of the state of Arkansas, had a complete defense to any action, which the corporation might have brought for the collection of his note; nor were his rights in this respect impaired by reason of the fact that the note was expressed to be payable to one Duvall instead of the corporation.

The consideration of the note was shares of stock issued by the corporation. The note was, therefore, properly an asset of the corporation, and seems to have been taken by Duvall upon the idea that he owned the corporation absolutely.

Even if the consideration of the note had been a transfer of stock by Duvall, still, under the uncontroverted facts showing the worthlessness of the stock and the illegality of the organization of the corporation, there was a total failure of consideration of the note.

The note, being non-negotiable, is subject in the hands of the plaintiff to any and all defenses which might have availed against it at the time of its transfer to plaintiff.

As, therefore, under the uncontradicted facts as far as the same are shown by oral evidence, and under the conceded facts as far as the same are shown by documentary proof, the defendant had a complete defense, the judgment for him was one for the right party, and must be affirmed regardless of minor errors which may have intervened at the trial.

Judge ROMBAUER concurs. Judge BIGGS is absent.