COMMERCE TRUST COMPANY, Respondent, v. H. H. HETTINGER, Appellant.

Kansas City Court of Appeals, June 1, 1914.

1. RECEIVERS: Sale to Itself: Security: Advancement. A banking institution, known as a Trust Company was organized and incorporated. Within a year it became insolvent and was taken in charge by the State Bank Commissioner. He and the directors agreed upon a plan whereby the depositors and other creditors might be speedily paid. The plan involved the ap-

pointment of the plaintiff (a certain other Trust Company) as receiver who would procure an order of court to sell the assets of the insolvent concern to the directors for $215,000. This was done with the understanding that the receiver Trust Company would advance the money for the purchase to the directors and they, to secure the Trust Company, for the money so advanced, would surrender to it the assets bought by them, for it to collect and settle the insolvent's affairs, reimburse itself and surrender back to the directors the remaining assets. It was *held*, that this was not a sale by the receiver to itself and that after the sale to the directors it merely had charge of the assets to secure, collect and reimburse itself, which it might legally do.

2. **CORPORATIONS: Organizing and Participating Stockholder: Estoppel.** A stockholder who is one of the organizers of a Trust Company corporation, subscribes for stock and pays one-half thereof, is elected director, vice president and executive committeeman, and who attends meetings and assists in supervising the company's affairs, will be estopped from asserting that the company was not organized according to law, when he is sued for the other half of his subscription.

3. ————: **Offices: Resignation: Defence.** Though one who joined in the organization of a Trust Company subscribed for stock and paid half his subscription, resigns his offices of vice president, director and executive committeeman, when he discovers fraudulent transactions had without his knowledge, that will not excuse him from liability for the remaining half of his stock subscription.

4. ————: **Stock Subscriptions: Calls: Assignment: Assets.** While the right to make calls for payment of stock subscriptions may not be delegated, yet when a call has been made and not paid, it may be assigned as a part of the assets of the corporation. And this right to assign may be exercised by a receiver.

5. ————: **Forfeiture of Stock: Threat.** A threat to forfeit stock subscription on the ground of nonpayment of a call for an unpaid portion, is not a forfeiture itself, especially if this be followed by the party concerned taking part in stockholders meetings.

6. ————: ————: ————. Where the directors purchasing the assets of the insolvent company have agreed to pay what remains of the assets to the fully paid-up subscribers, that fact will not afford a defense to a stock subscriber in an action for his unpaid subscription.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield*, Judge.

AFFIRMED.

*George L. Davis* and *Paul R. Stinson* for appellant.

*Robinson & Goodrich* for respondent.

ELLISON, P. J.—Plaintiff is a banking institution in Kansas City known as a trust company and does a general business common to such companies. It instituted this action to recover of defendant that part of his subscription to the capital stock of a certain other trust company known as the American Trust Company of Kansas City, which he had not paid and obtained judgment in the trial court.

It appears that defendant and others on the 18th of January 1911, executed articles of association preliminary to the incorporation of the American Trust Company. These articles recite that the capital stock was one million dollars, of which two hundred and fifty thousand had been subscribed in par value shares of $100 each, and that one half of the latter sum ($125,000) had been paid and was in the custody of defendant and several others therein named as the first board of directors. These articles set out the names of all the incorporators with the amount of stock subscribed by each, this defendant having forty shares.

On the 23rd of January, 1911, the board of directors just mentioned, organized. The defendant took an active part therein and was elected vice president of the company, and a member of the executive committee. The company opened for business the next day with $156,000, including surplus of $31,000, subscribed with the stock. Defendant continued in these

positions for near six weeks, when, on the 4th of March, he resigned. At this time $95,000 in deposits had accumulated and the company had invested in bonds, stocks, etc. to the amount of $160,000. Defendant as an officer of the company took active part in the transactions which brought about the results just mentioned.

On the 5th of August, 1911, the board of directors called for the balance unpaid of the subscriptions to stock; that is, for $50 per share proper, and $12.50 per share for the surplus, making $62.50 which made due from defendant's subscription of 40 shares the sum of $2500.

It soon became evident that for causes we need not here note, the institution was resting on frail foundation and on the 30th of December, 1911, not quite a year from its organization, the State Bank Commissioner closed its doors and took charge of its affairs. This officer, together with some of the directors, and stockholders, much desired to pay depositors and other creditors at the earliest day it could be done. To this end, these directors and stockholders conferred with this plaintiff to assist the matter to successful result by advancing the necessary money. Plaintiff addressed a letter to these directors saying that it understood that the parties concerned, including the State Bank Commissioner, were willing to arrange for the sale of the assets of the company for $214,500; and that these directors and stockholders were willing to pay that price, and that it would advance to them $174,500 of this money if the directors would arrange for the balance ($40,000). The sale of the assets to these directors and stockholders was to be made through a receiver appointed by the court, and plaintiff's communication made it a condition that it should be the receiver; and that when the depositors had purchased the assets, it would turn them over to the plaintiff to collect and adjust so that it could reimburse itself for the money it advanced to the depositors to

pay the company's debts and take out its fee of $10,000 for its services in the entire matter. After this was done, then plaintiff was to surrender to the directors all the remainder of the assets.

On the petition of the Attorney General of the State this plaintiff was duly appointed receiver of the company by the circuit court. Thereupon plaintiff, as receiver, presented the offer to the court and asked authority to sell. It was also recommended by the State officers concerned. This sum was sufficient to pay all depositors and creditors, but the court required the payment of $2500 additional to cover contingencies not then known, and made the order of sale, and these ex-directors became the purchasers. On the same day, in accordance with the understanding, they transferred back to plaintiff individually the company assets which plaintiff as receiver had sold them, so that plaintiff could begin collecting and liquidating the affairs of the company for them.

But at the time these things occurred these directors executed a paper to the effect that when they became reimbursed out of the assets surrendered to them by the plaintiff, they would pay the balance realized, proportionally to the fully paid up stockholders of the company.

From the foregoing statement it will be seen that the directors and stockholders in the company, with the consent of the State Bank Commissioner, arranged with the plaintiff to obtain the necessary money to pay its depositors and other creditors. That to secure plaintiff for the large sums advanced, it was arranged that it was to be appointed receiver and when the sale was made, the assets were to be turned over to it by the purchasers and it, with the assistance of the directors, was to begin the process of settling the defunct company's affairs. And when it should have reimbursed itself, including charges for services, it was to surrender back what remained to the directors, who after

reimbursing themselves, the $40,000 advanced by them, were to pay what remained proportionately to the stockholders who had paid their subscriptions in full.

We have no doubt that defendant is liable for his unpaid subscription. As said by this court in Sedalia Ry. Co. v. Abell, 17 Mo. App. 645, "When the capital stock and number of shares are fixed, by the act of incorporation no assessment can be lawfully made on the share of any subscriber until the whole number of shares has been taken." But, as stated by HALL, J., in that case, (p. 656) this defense is not tenable after the articles of association have been filed and proper certificate of corporate existence has been duly issued by the officer authorized by law to issue it. It is a matter for the State and not the defaulting subscriber. To the same effect is Home Stock Ins. Co. v. Sherwood, 72 Mo. 461.

But there is another reason shutting out such defense which will appeal to all as exceedingly just, and it applies to defendant's entire defense of fraud, deception and imposition in regard to his being misled and deceived as to the amount of stock subscribed, the assets of the company and the like. He was one of the organizers and incorporators of the company. He seems to have been one of the leaders and as we stated at the beginning, he was not only a stockholder, but a director, vice president and member of the executive board. He attended directors meetings and took prominent part in all the early transactions of the company, and this was the time when the misdeeds he complains of occurred. The Supreme Court said in Central Plank Road Co. v. Clemens, 16 Mo. 359, 365, that where a subscriber for stock "has assisted in the organization of the company, he will not be permitted to escape the duty he assumed when he subscribed for the stock, upon the ground that the company was not organized in strict conformity to the law." In Kansas City Hotel Co. v. Harris, 51 Mo. 464, 466, the Supreme

Court said "that the defendant having participated in all the proceedings creating the corporation, and in increasing the stock and making the calls both as a stockholder and a director, he is now estopped from raising any question in this action as to their validity. To the same effect is Kansas City Hotel Co. v. Hunt, 57 Mo. 126, 130.

We quote from Business Men's Ass'n v. Williams, 137 Mo. App. 575, 587, "It is well settled that even though the preliminary subscription be irregular and unenforceable, if the party subscribing thereto attends the meeting and participates in the organization of the contemplated corporation, he is estopped thereby to thereafter deny his obligation in that behalf." The same statement of the law is made in Smith v. Heidecker, 39 Mo. 157. A sentence from the opinion in that case may be quoted here as quite applicable to the record facts in this case: "Indeed," said the court, "every question of fraud on the part of this company, or those connected with it, from its inception down to the period of its dissolution, may be dismissed with the general remark, that the garnishee was too prominently connected with the corporation to derive any advantage therefrom." In Occidental Ins. Co. v. Ganzhorn, 2 Mo. App. 205, 208, the court expresses the same idea when it states that fraud might excuse the subscriber from paying his subscription, "unless such subscriber has accepted the charter, and by his *own acts* has assisted in putting it in operation." We do not see why defendant should think that Haskell v. Worthington, 94 Mo. 560 in any way aids his position. Instead of being contrary to the foregoing authorities, it supports the present judgment when the facts are considered.

Defendant more than once was sought to destroy the effect of plaintiff's position in the controversy by saying that it is only creditors who may invoke the law we have stated. But that is not correct. The

foregoing cases were contests between the corporation and the stockholder. The theory holding the latter to his subscription is stated in Business Men's Ass'n v. Williams, supra, to be that the acceptance of stock subscription and payment thereon binds the corporation to respond to him in the capacity of stockholder, and therefore he is thereby estopped from denying the obligation on his behalf, unless there be fraud; and as to that we have not seen any evidence of fraud in this case that defendant could invoke, since, as we have seen, he made himself a party to the organization. In Kirkwood Ass'n v. Van Ness, 61 Mo. App. 361, 365, it is said that, "The criterion of the liability of a subscriber to stock in a corporation is, whether any act has been done by which the corporation has been forced to receive the subscriber." It is stated in Fish v. Smith, 73 Conn. 377, 389, that "It is urged that the defendant is under no liability except to creditors, and that there are now no creditors, since all demands were satisfied by the Western Realty Company. His original liability was to the corporation. Had it never owed a debt to any one, he could still have been compelled by the directors to pay calls."

Defendant testified that on the 4th of March he discovered there was fraud in the organization of the company and in its business transactions thereafter and that he thereupon resigned as director and vice president. That fact, if we are right in the legal propositions we have stated, cannot affect the question of his liability for the subscription to the stock.

While the right to make calls for payment of stock subscriptions may not be delegated to another person or body than that authorized by the articles of incorporation, or the law, yet after a call has been made and not paid, it may be assigned. [Schultz v. Sutter, 3 Mo. App. 137, 140, 141; Wells v. Rodgers, 50 Mich. 294; Dean v. Briggs, 25 Hun, 122; affirmed 93 N. Y. 662; 1 Cook on Corporations, sec. 111.] And this right,

though not exercised by the directory, may be exercised by a receiver. [Heguenbourg v. Edwards, 155 Mo. 514, 521; Fish v. Smith, 73 Conn. 377; Cook on Corporations, Sec. 108.]

Again he says, that his subscription and his rights as a stockholder were forfeited by the board of directors, and that therefore he is not liable. The facts do not bear out this claim. After a call for the unpaid part of defendant's subscription made in the forepart of August, 1911, to which, although notified, he did not respond, a further notice was ordered by the directory to be given to him that if he did not pay by the first of December his stock would be forfeited and he was so notified. But it does not appear that any forfeiture was actually taken. A mere notice of forfeiture, to be had in the future, is not a forfeiture. [1 Cook on Corporations (6 Ed.), Sec. 125, 126, 131.] Besides defendant participated in a meeting of the stockholders on a day subsequent to the date his stock was to be forfeited. It appears that no sale of his stock was ever made and nothing more than a threat seems to have occurred.

Objection is made that the vendee directors who purchased of the receiver have only agreed to account for the remaining assets to the stock subscribers who have *fully* paid up. This it is said will cut out defendant and others in like situation. We need not say what, if any, rights he has; and only add that that cannot affect his liability to this action.

It seems the court rejected defendant's offer of exhibits A, C, and D, which are set out in the record. The first was in the nature of a proposition or proposal from the plaintiff of its aid to the directors, which was afterwards agreed to and a contract embodying substantially the terms of the proposal followed and that was received in evidence. There could be no service for the proposal beyond encumbering the record and it was properly rejected. The others were

an inventory and a supplemental inventory and in view of our conclusions as to the law of the case, could not have been of any benefit to defendant. They were properly excluded.

In this connection we may state that defendant amended his answer so as to allege that the sale made by plaintiff as receiver was a sale made to itself, and much space is devoted to this in argument. But it will be seen by the facts already stated that such was not the case. The sale was ordered by the court and the receiver sold to the men of the former directory who were then and *remained* the parties in interest as purchasers. The ground for the assertion that plaintiff sold to itself rests on the fact that in order to secure itself for the large sums of money it advanced to the vendees to enable them to make the purchase, it required them to place the assets in its hands to collect and pay out as we have already shown. Plaintiff has no further interest in the matter than for the purposes stated, and when this is accomplished the assets are to be delivered over to the vendees for the purposes heretofore stated. It is unnecessary to say whether, even if the sale had been made by plaintiff as receiver to itself individually, defendant could attack it in this collateral way. On this subject see Groeltz v. Cole, 128 Iowa, 340.

In additional briefs defendant has cited us to Heguembourg v. Edwards, 155 Mo. 514 and Trust Co. v. McMillen, 188 Mo. 547. We do not see that they have any application whatever to this case. Neither was an action for an unpaid stock subscription, and neither refer to the line of decision we have cited as decisive of this case. In the first the court took pains to state (p. 519) that the action was not against a stockholder for his unpaid subscription. In the second a creditor was seeking to hold stockholders for the payment of a judgment against an insolvent corporation and such stockholder was allowed to take ad-

vantage of the knowledge of the creditor as to the true nature of the stock subscriptions.

After a careful examination of the extended briefs and arguments presented by the respective counsel we find the circuit court could not have rendered any other judgment and it is accordingly affirmed.  All concur.