SPRIGG v. COMMONWEALTH TITLE INS. & TRUST CO.

(Circuit Court of Appeals, Third Circuit. June 24, 1904.)

No. 4.

1. DECEIT—FALSE REPRESENTATIONS—CONSTRUCTIVE FRAUD.

A mortgage to defendant, as trustee, securing bonds executed by a timber company, provided that the bonds should not be valid until certified by the defendant, and that before issuing any of the bonds there should be deposited with defendant, by the mortgagor, a sum of money sufficient to pay off the first four coupons (two years' interest) on the bonds. The mortgagor, after defendant had accepted the trust, pledged 100 of the bonds to plaintiff, and gave plaintiff an order on defendant therefor, whereupon defendant delivered to plaintiff a letter reciting receipt of the order: that the bonds were part of an issue described on the mortgagor's property, the title to which, etc., had been examined and approved by defendant; and that the papers were then in its possession, and stating, "We will hold the one hundred bonds subject to your order." Held, that defendant's promise to hold such "bonds" constituted a representation that defendant had certified the bonds, and received the money in compliance with the conditions precedent to their validity, the falsity of which representation was sufficient to entitle plaintiff to recover damages suffered by its having acted on the faith thereof, in an action against defendant for deceit.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 119 Fed. 434.

Thomas Leaming, for plaintiff in error.

J. Hazleton Mirkel, for defendant in error.

Before ACHESON and GRAY, Circuit Judges, and KIRKPAT-RICK, District Judge.

GRAY, Circuit Judge. The record brought up by the writ of error in this case discloses testimony tending to prove the following facts:

In the spring of 1893, the firm of Rice Bros., of Providence, R. I., had dealings with the Standard Coal & Timber Company, a corporation then recently organized and doing business under the laws of the state of West Virginia, which resulted in a contract arrangement between them, by which Rice Bros. purchased a large quantity of timber, upwards of ten millions of feet, to be delivered, with freight and other charges paid, at Boston, Mass., at a price agreed upon. In pursuance of said contract, Rice Bros. were to advance to the timber company $15,000 to enable the company to proceed with the delivery of the timber. As security for the performance on their part of the contract, the timber company agreed to deliver to Rice Bros. 100 of their first mortgage coupon bonds, for $1,000 each. By an indenture dated the 2d of May, 1892, the said Standard Coal & Timber Company had executed a mortgage to the defendant, the Commonwealth Title, Insurance & Trust Company, which, after stating that certain bonds were to be executed and issued by said company for the aggregate amount of $1,000,000, and to be secured by said mortgage, conveyed to the said defendant as mortgagee, in trust, all its property, corporate rights, privileges and franchises in connection with the land and premises therein more particularly described, and comprising a tract of land in the state of West Virginia, of 204,000 acres. By a covenant contained in said mortgage, it was stipulated that the bonds issued to the said defendant company, in trust, should not be valid until certified by the said trust company, and further, that "before issuing any of the bonds herein described, there shall be deposited by the party of the first part, with the said trustee, a sum of money sufficient to pay off the first four coupons (two years' interest) on said bonds." The Commonwealth Title, Insurance & Trust Company, the defendant, was incorporated for the purpose, among other things, of accepting and executing trusts of this character, and was entitled to receive compensation therefor. The trust was duly accepted by the said company, as appears by the following acceptance upon said mortgage, and duly recorded therewith:

"The Commonwealth Title, Insurance and Trust Co. accepts the Trust mentioned in the foregoing instrument on the terms, conditions and limitations therein prescribed.

                              By                      Henry M. Dechert,
     Witness:                                                   President.
                                               A. A. Stull,
     [Seal of Incorporation]                                   Secretary."

Prior to April 29, 1893, the whole number of bonds executed, so far as the timber company was concerned, were in the hands of the defend-

ant company, as trustee, and some had been issued prior to that date by the said trust company, certified by it as required by the stipulation in the mortgage above referred to, and for the four coupons (two years' interest) on which there had been deposited with the said trustee, a sum sufficient to pay the same.   On the date last mentioned, and pursuant to the dealings between Rice Bros. and the defendant, the following order was issued in favor of the Rice Bros. to the defendant:

"Philadelphia, April 29th, 1893.

A. A. Stull, Esq., Secy. Commonwealth Title Insurance & Trust Company, Philadelphia, Pa.

Dear Sir:—You will please hold in trust or deliver to the order of Rice Brothers, lumber dealers of Providence, R. I., one hundred (100) first mortgage one thousand dollar ($1,000) bonds of the Standard Coal and Timber Company, in accordance with the terms of mortgage or trust deed held by you to secure said bonds.

Respectfully yours,          Standard Coal and Timber Company.
By C. C. Cokefair, Secy."

Rice Bros. then deposited with their counsel, Carroll Sprigg, the contract they had with the timber company, and six promissory notes, aggregating in amount $15,000, which represented the advance they were to make to the timber company, to be held in escrow by him until the defendant, the Commonwealth Title, Insurance & Trust Company, should acknowledge the receipt of the above order, and deliver the bonds, or hold them for the benefit of Rice Bros., his clients.   He accordingly drafted a letter, which was taken to Philadelphia by the timber company's assistant secretary, and a letter copied therefrom was signed by the defendant and brought back to New York, whereupon Mr. Sprigg delivered the contract and notes to the timber company. These notes were afterwards paid in full, at maturity.   The letter referred to, and which is the foundation of the suit in the court below, is as follows:

"Philadelphia, April 29th, 1893.

Messrs. Rice Brothers, Providence, R. I.

Gentlemen:—We are in receipt of an order from the Standard Coal and Timber Co., of West Virginia, instructing us to hold in trust for you one hundred, first mortgage, $1,000 bonds of said Company; the same being part of an issue of 1,000 bonds, $1,000,000, all of which are equally secured by a first mortgage or deed of trust dated May 2nd, 1892, made to the Commonwealth Title, Insurance and Trust Company of Philadelphia as Trustee by the said Standard Coal & Timber Company of West Virginia, covering 204,000 acres of mineral and timber lands located in McDowell County, in said State of West Virginia.

The Company is incorporated under the laws of the state of West Virginia, and the bonds are secured by the first mortgage or deed of trust now held by us as Trustee.  Said mortgage or deed of trust together with certified abstract of title, opinions as to value of property covered by said mortgage or deed of trust, maps, surveys, and other papers relating to the same have been carefully examined and approved by us and are now in our possession.

We will hold the one hundred (100) bonds subject to your order.

Respectfully yours,          A. A. Stull, Treasurer."

It was testified that, at the date of this letter, a decree of the court of last resort in West Virginia had been entered, declaring the title of the 204,000 acres of land mortgaged, absolutely void.   It was also in testimony that the Rice Bros. lost their advances of $15,000 and also about $40,000 on the timber contract.   On November 6, 1893, Rice

Bros. demanded delivery of the bonds, pursuant to defendant's under-
taking, in the following letter:

"Providence, R. I., November 6th, 1893.

To the Commonwealth Title, Insurance & Trust Company, 813 Chestnut street,
    Philadelphia, Pa.

Gentlemen:—Please send us by express the one hundred first mortgage one
thousand dollar bonds of the Standard Coal & Timber Company, held subject
to our order, pursuant to the terms of your letter to us, dated April 29th, 1893.
We will pay the express charges at this end of the line.

Yours truly,                                        Rice Bros."

In response to that letter, Rice Bros. received a letter, dated Novem-
ber 8, 1893, as follows:

"Philadelphia, November 8th, 1893.

Messrs. Rice Bros., Providence, R. I.

Gentlemen:—Replying to your favor of the 6th, since writing you on April
29th, we have declined to act as Trustee for the bonds, and have so notified
the company.

Very truly yours,                                 A. A. Stull, Treas."

To this letter, the following answer was returned:

"Providence, R. I., November 11, 1893.

A. A. Stull, Esq., Treasurer, Commonwealth Title, Insurance & Trust Co., Phil-
    adelphia, Pa.

Dear Sir:—Our request to you under date of the 6th instant was addressed
to you for the purpose of securing the possession of the bonds as contem-
plated under the terms of our arrangement with you. As we understand your
reply, coupled with the information that has come to us from the officers of
the Standard Coal & Timber Company, it indicates that you propose a resig-
nation of your Trusteeship under the mortgage or deed of trust securing the
bonds you now hold subject to our order. To this we of course have decided
objection until we shall have at least had an opportunity of ascertaining the
responsibility, pecuniary and otherwise, of the company, which may act as
your successor, and therefore, we do now respectfully enter our protest against
any such change of Trusteeship. Our letter was written to you for the pur-
pose of obtaining the bonds mentioned, and we hereby again respectfully re-
quest their delivery to us, for we fail to see what right you have to withhold
them from us for any such reason as that alleged in your letter. We write
this letter because we think from your reply that you may not have lately
read your letter to us of April 29th, which has no bearing upon any rights or
purposes the Standard Company and your company may have for a change of
Trusteeship under the mortgage. We shall expect you to forward the bonds
at once, as their non-delivery to us as requested herein may cause us serious
damage.

Yours respectfully,                              Rice Brothers.

Dictated by A. B. R."

As no reply was received to this letter, the matter was taken up, for
Rice Bros., by their counsel, Mr. Sprigg, who received the following
letter from Mr. Dechert, president of the defendant company:

"Philadelphia, December 4, 1893.

Carroll Sprigg, Esq., 29 Broadway, New York.

Dear Sir:—Since the receipt of your letter of the 24th ult. we have been
definitely notified that the Standard Coal and Timber Co. would within a few
days elect a new trustee in the place of this Company, resigned. We find that
in September last this Company duly resigned by letter of resignation sent to
that Company and that a few days afterwards that Company by its Asst. Sec-
retary and Treasurer duly notified this Company that all of the officers and
directors agreed that our resignation should be accepted and likewise accepted
the notice previously sent to them that pending this election of a new trustee

we would deliver no more bonds or do any other act as trustee. You will see that under this state of facts, and as we are again informed that at an early date a corporation meeting will be called for the election of a new trustee, this Company should not at present intermeddle by the delivery of bonds. We will keep you advised of the election of such new trustee, so that your interest may be protected.

Yours respectfully,                    Henry M. Dechert, President."

Four months thereafter, there was a letter from F. Carroll Brewster, as counsel for the defendant company, to Carroll Sprigg, as counsel for the Rice Bros., in which the writer, among other things, says:

"1. No bonds now in the possession of the Trustees have been certified by signature endorsed thereon—as required—to give them validity. If this be so—the delivery to your Clients would only be of pieces of paper.

2. Not one dollar has been deposited by the mortgagors—by your clients or by any person to pay the first four coupons on the bonds you claim."

Suit was brought in the name of the Rice Bros., Carroll Sprigg being the use plaintiff, and testimony tending to show the facts herein recited was given at the trial. In the pleadings, the action was stated to be one of trespass on the case, and the statement of claim, as first filed, set forth specially, as negligence on the part of the defendant, the statement, "that the mortgage or deed of trust, maps, surveys and other papers relating to the same have been carefully examined and approved by us and are now in our possession," and that, in reliance upon such statement, the promissory notes, contract and other papers were delivered to the timber company. At the trial, the statement of claim was amended, so that the learned judge of the court below approved it as a proper declaration in an action for deceit, based upon the declaration of the defendant in his letter of April 29, 1893, after reciting the order of the Standard Coal & Timber Company, of the same date, that it would hold the 100 bonds therein referred to, subject to the order of Rice Bros. This, the amended statement of claim averred to be an undertaking to hold valid bonds secured by a first mortgage, when in fact defendant had not certified such bonds, and knew it had not certified the same and that the money required to pay for the first four coupons had not been deposited with it, and that said bonds, without such certification and deposit, were expressly not valid.

It was testified by Rice, that in making the advance of $15,000, and entering into the obligations of the contract, he relied absolutely upon the declaration that these bonds were held for them, and that he fully understood there should be $10,000 (two years' interest) deposited before the bonds could be issued. Sprigg, who was acting as counsel for the Rice Bros., testified as follows:

"I knew that the mortgage required certain conditions precedent to be performed, as well as the bonds. I advised Mr. Rice, in view of the high standing of the trust company, that any letter they would write would be perfectly satisfactory to me as his adviser, and on the strength of such letter from the trust company, I would advise the turning over of the contracts and notes, and papers, and pursuant to his agreement to that effect, I turned over the papers. * * * Mr. Cokefair told me the money was deposited for the coupons at the time I got the first bond from him, and on the 29th of April, the statement was reiterated in my office. Then I knew the bonds could not have been valid without the terms of the mortgage were complied with and the certificate at-

tached. * * * Q. You say on the 28th or 29th, at an interview at which Rice and Cokefair were present, you were told by Mr. Cokefair what? A. He said they had title to 204,000 acres of land down there, and they had the money deposited for the first four coupons—in other words, the bonds Mr. Rice was to get were in the same condition of my one bond. Q. The one bond that you got—did that have the coupons stamped and guarantied on the back? A. It had a rubber stamp impression on the back, the exact language of which I have forgotten, but it was the same in substance as that on the back of those. Q. You do not know the exact language, but what was the effect of it? A. Guarantying it. Q. By whom? A. By the trust company. Q. As a matter of fact were the first four coupons on your bond duly paid? A. They were. Q. And you had that knowledge of your own individual experience at the time you were representing Mr. Rice in this transaction? A. I did, and advised Mr. Rice of that fact. Q. Did you know other people who had these bonds? A. Yes, I knew them personally, and know them to-day. Q. Did you ever know of any trouble in the payment of interest on other bonds the first two years? A. They were all paid."

On the face of the bonds or writings executed by the timber company, and deposited with the defendant company, was the following:

"This bond shall not become obligatory unless it shall have been certified by the signature of the Trustee, endorsed thereon."

There were also offered in evidence, three of the coupons attached to bonds that had been issued by the defendant to show the language of the guaranty, which was stamped on the backs of the coupons, when the bonds were issued to other persons. It reads:

"Payment of this coupon guaranteed by the Commonwealth Title, Insurance and Trust Company of Philadelphia, A. A. Stull, Treasurer."

It was agreed at the trial, that this was the form used upon the first four coupons of all bonds that were issued. At the conclusion of plaintiff's testimony, a motion for nonsuit was granted by the learned judge of the court below, and judgment accordingly entered.

Upon the pleadings, and upon the testimony adduced by the plaintiff, we think the case should have gone to the jury. The question is, whether, when the defendant agreed to deliver or hold in trust 100 bonds to or for the plaintiff, they did not undertake to deliver or hold in trust bonds such as they were authorized to issue, that is, bonds which were certified by the trustee, and for the two-years interest on which, there had been deposited with the trustee a sum sufficient to pay the same. The representation made by the defendant company, in its letter of April 29th, was not that of an irresponsible or indifferent person, but of one charged with a special duty toward the one to whom the representation was made. The Commonwealth Title, Insurance & Trust Company, the defendant, was the trustee of the mortgage made by the timber company, to secure bonds to be issued by said timber company. These bonds, also, were issued to the defendant, as trustee, and it had specifically and in writing accepted the trust "on the terms, conditions and limitations" prescribed in the mortgage. The order given by the timber company, in favor of Rice Bros., expressly required that the 100 bonds mentioned in the order should be delivered to or be held in trust for Rice Bros., in accordance with the terms of the mortgage or trust deed given to secure said bonds. This order was

expressly accepted in the letter of the defendant, of the same date, as follows:

"Messrs. Rice Brothers, Providence, R. I.

Gentlemen:—We are in receipt of an order from the Standard Coal & Timber Company of West Virginia, instructing us to hold in trust for you one hundred, first mortgage, $1,000 bonds of said Company; the same being part of an issue of 1,000 bonds, $1,000,000, all of which are equally secured by a first mortgage or deed of trust, dated May 2nd, 1892, made to the Commonwealth Title, Insurance and Trust Company of Philadelphia, as Trustee. * * * We will hold the one hundred (100) bonds subject to your order.

Respectfully yours,                    A. A. Stull, Treasurer."

Surely, under the circumstances appearing in this case, this was not an idle representation that they held 100 pieces of paper that were clearly, by the stipulation of the mortgage, repeated on the face thereof, not valid as bonds, and which, by another stipulation in said mortgage, could not be issued by said trustee until there had been deposited with the said trustee an amount sufficient to pay the interest coupons for two years. It was in testimony that these stipulations and conditions were understood by Rice Bros. and by Sprigg, their counsel. If this were not so, the clear and unequivocal declaration of the trustee, in the letter of April 29th, had no meaning, and amounted to nothing, though made deliberately under the circumstances set forth in the testimony, with full knowledge on the part of the declarant, that important action on the part of the plaintiff, involving pecuniary risk, was to be based thereon. We may assume the exercise of ordinary intelligence in the transaction of human affairs. We cannot, therefore, gratuitously impute to the parties to this transaction, such a want of ordinary intelligence, as would be implied by the contention, that the carefully worded order of the timber company, to the defendant, to deliver or hold in trust the 100 bonds, and the written acceptance by the defendant, that it would hold the same on the "terms, conditions and limitations" of the mortgage, meant to those parties only, that 100 worthless bits of paper were to be so delivered or held. We think that Rice Bros., and those acting for them, had a right to rely upon this declaration, as one importing that these bonds had been duly certified, and that two years' interest ($10,000) had been deposited with the trustee, and to that extent guarantied, when the promissory notes and written contract were delivered. It is in testimony, that the trustee had already issued bonds properly certified, and containing a guaranty that money sufficient to pay two years' coupons had been deposited. There is nothing in the case made by the plaintiff, to indicate that the trustee had any reason to think that it was authorized, either to deliver or hold in trust, bonds or paper writings, invalid for want of compliance with the stipulated conditions, or that it was truthful to say that it held bonds pursuant to the said order, when they had neither the certification nor the deposit of money requisite to their validity. The defendant was made the mortgagee in the trust mortgage, as also the obligee in the bonds, which were to be deposited in trust, to be disposed of by the obligor for its own purposes. No bonds could, therefore, be issued or delivered, except by the trustee at the order of the timber company. We think that, by the acceptance of the trust under the

mortgage, the defendant trustee undertook, and had imposed upon it, the legal duty to see that no bonds were issued or held pursuant to the orders of the obligor, unless the conditions prescribed in the mortgage were complied with.

The declaration by the trustee, that it held in trust the 100 bonds, pursuant to the order to hold in trust or deliver these bonds, was equivalent to a delivery, so far as the rights of Rice Bros. were concerned. The order of the trustee was to "hold in trust" or "deliver." The declaration of the trustee was, that it held in trust the 100 bonds subject to the order of Rice Bros. It is no refinement of reasoning to say that these bonds could be no more held in trust by the trustee under this declaration, without complying with the stipulations of the mortgage, than they could be delivered without such compliance. The testimony is such, that the jury might well draw the inference, that this representation that it held bonds valid under the requirements of the mortgage, was not only false, but that the defendant alone knew that it was false. There was also testimony which would warrant a jury in finding that money had been advanced, and loss incurred to a serious amount by the plaintiff, by reason of its acting upon the faith of the representation thus made by the trustee.

We have here testimony tending to show all the elements necessary to an actionable misrepresentation, to wit, a false representation; knowledge of its falsity by the party who made it; ignorance of its falsity by the party to whom it was made; intention that it should be acted upon, and an actual acting upon it by the plaintiff, with resulting damage to it in consequence thereof. We cannot say that there was no evidence to go to the jury, in support of such a case as is claimed to have been made out by the plaintiff. The suggestion, that because the draft of the letter, written by the defendant company, was made by the plaintiff's attorney, its terms imposed a duty upon the defendant less exacting than if the letter had been voluntarily framed by it, does not appeal to us. The proposal of such a letter by plaintiffs, prior to their assuming grave pecuniary responsibility, might well have emphasized the caution with which the defendant should act in the execution of its responsible office. We cannot hold that the defendant should be released from all responsibility in the important relation it held towards the plaintiff, for a representation which it either knew to be false, or made with reckless disregard as to its truth, and upon the faith of which, the plaintiff so acted as to incur serious pecuniary loss, or that a jury should not consider, upon the evidence before it, whether, to the extent of $10,000 at least, defendant should not recoup the plaintiff for that loss.

We have examined carefully all the cases cited by the counsel for both the plaintiff in error and defendant in error, but it is only necessary to say, that the current of decisions, both federal and state, abundantly support the conclusion at which we have arrived. We do not think the case was one which should have been taken from the jury.

The judgment of nonsuit is therefore reversed, and a venire de novo awarded.