## McMANUS et al., Respondents, v. OREGON ₁SHORT LINE RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, April 10, 1906.**

1. **CONFLICT OF LAWS: Common Law: Territory Ceded From Spain.** The territory comprising the State of Idaho was acquired from Spain and never subject to the laws of England, and it will not be presumed that the common law is in force in that State. In an action brought in this State for damages incurred in Idaho through the negligence of the defendant, in the absence of proof of what the laws of Idaho are, the laws of this State will be applied in determining whether defendant violated the duty which it owed the plaintiff.

2. **MASTER AND SERVANT: Safe Place to Work: Blocking Switch Frog: Jury Question.** In an action by the widow of a brakeman for damages on account of his death caused by the negligence of his employer, the defendant railroad company, where the evidence tended to show that the plaintiff, in attempting to uncouple certain cars, stepped between the cars, caught his foot in the switch frog which was not provided with a "block," and was run over and killed; that it was common practice for railroad companies to provide blocks for the switch frogs which would prevent such an accident; the question as to whether or not the company was negligent in failing to provide blocks for its switch frogs was for the jury.

3. ———: ———: ———: **Contributory Negligence.** Where the evidence showed that the cars were provided with automatic couplings by which the cars could be uncoupled without going between them, but further showed it was necessary to go between the cars to detach the air-brake hose, whether the plaintiff was guilty of contributory negligence in going between the cars was a question for the jury, because it might be inferred that he went between them for the purpose of detaching the hose.

4. ———: ———: ———: **Assumption of Risk.** Nor did the plaintiff assume the risk incident to going between the cars if it was necessary to do so in the performance of his duty.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

*Jeptha D. Howe* and *Alphonso Howe* for appellant.

(1) The court erred in refusing the instruction offered by the defendant at the close of the whole case. (a) The failure of defendant to block the guard rail was not negligence. (b) The death of McManus was caused by his own negligence. (c) The deceased assumed the risk. (2) It is not negligence to leave guard rails unblocked. O'Neil v. Railroad, 92 N. W. 731; Southern Pac. Co. v. Seeley, 152 U. S. 145; Railroad v. McCormick, 74 Ind. 440; Kilpatrick v. Railroad, 121 Fed. 11; Gilbert v. Railway, 128 Fed. 529; Morris v. Railway, 108 Fed. 747; McManus v. Railroad, No. 4973, U. S. C. C., opinion by Judge Adams. (3) The evidence shows that the deceased went in between the cars when they were going at the rate of from five to seven miles an hour. The rules of the company, with which he was familiar, prohibited this. It was not necessary for him to go in between the cars to make a coupling, as the cars were provided with automatic couplers in good condition, and it was his duty to brake the air hose while the cars were still. Hyson v. Railway, 86 S. W. 928. (4) The authorities seem to be uniform that where a brakeman has knowledge of the unblocked system being used, he assumes the risk incident thereto in continuing the service. Switchman assumed risk for switches not being blocked. Where none of the frogs at any of the switches on a railroad are blocked, no recovery can be had by a brakeman, experienced on the road, for injuries suffered from having his foot caught in one of them. Sheets v. Railway, 139 Ind. 582; Spencer v. Railroad, 22 N. Y. Supp 100; Railway v. Thompson, 11 Tex. Civ. App. 658.

*Bond & Bond* for respondents.

(1) Whether or not the failure of a railroad company to block its guard rail affords an inference of negli-

gence, is a question of fact to be determined by the jury from all the circumstances of the case. Alcorn v. Railway, 108 Mo. 103, 18 S. W. 188; Smith v. Fordyce, 190 Mo. 25. Mere knowledge that an instrumentality is defective and that risk is to be incurred thereby, is not, as a matter of law, sufficient to defeat the action by the employee, if the danger is not such as to threaten immediate injury, or if it be reasonable to suppose that the appliance might be safely used by the exercise of care. Huhn v. Railway, 92 Mo. 447, 4 S. W. 937; Adams v. McCormick Harvesting Machine Co., 95 Mo. App. 117, 68 S. W. 1053; Curtis v. McNair, 173 Mo. 279-280, 73 S. W. 167; Shore v. American Bridge Co., 111 Mo. App. 290, 86 S. W. 905. (2) Where the facts are disputed or when different inferences can fairly be drawn from the undisputed facts, the question of contributory negligence is always for the jury. Young v. Waters Pierce Oil Co., 185 Mo. 667, 84 S. W. 929; Cambron v. Railroad, 165 Mo. 558, 65 S. W. 745; Hamilton v. Rich Hill Coal Mining Co., 108 Mo. 372, 18 S. W. 977; Holenbeck v. Railway, 141 Mo. 110, 38 S. W. 723, 41 S. W. 887; Petty v. Railway Co., 88 Mo. 306; Taylor v. Railway, 26 Mo. App. 336.

STATEMENT.—Adda McManus is the widow of John McManus. John Kelly McManus was their only child. On December 11, 1902, while in the employ of the defendant as brakeman and switchman at Nampa, in the State of Idaho, John McManus was run over and killed by one of defendant's cars. Adda McManus, in her own right, and John Kelly McManus, by and through his mother, duly appointed his next friend, both being residents of this State, brought this suit to recover damages caused by the alleged negligent killing of John McManus. The specific allegation of negligence is as follows:

"That on or about the eleventh day of December, 1902, John McManus, deceased, husband of the said

Adda McManus and father of her minor child, an employee of the above-mentioned defendant, while in the performance of his duty, that of coupling cars on the Falk track in the above-mentioned switching yard of defendant, was run over and killed by a train of cars belonging to and operated by said defendant.

"That the said running over and killing of said John McManus was directly and proximately caused by the fact that one of his feet was caught and held between the guard rail and a track rail, which the defendant negligently placed and maintained on its side track opposite an offshoot from said side track, which offshoot was a private switch running to an oil tank, and which said guard rail and track rail so situated were negligently placed and maintained by defendant without any blocking or filling in between said rails, and so negligently and closely laid to each other, that a man's foot when once caught between them could not be released from their clasp in time to save himself from being run over by the train of cars doing switching work over that portion of defendant's roadbed, as one of its trains was then doing."

Under the laws of the State of Idaho, specially pleaded and offered in evidence by the plaintiffs, Adda, as the widow, and John Kelly, as the child of John McManus, are entitled to share equally in his estate; and a right of action to recover damages caused by the death of said John McManus is given to them against the defendant, if he came to his death "by the wrongful act or negligence of the defendant."

Plaintiff's evidence shows that for five or six months prior to his death, John McManus had been in the employ of the defendant railroad company as a brakeman and switchman in its yards at Nampa; that on December 11, 1902, a local train arrived at Nampa between nine and ten o'clock a. m.; that seven cars were being pushed by the engine on or over a switch track known as the "Falk track," and deceased got down off of one of these

cars and stepped in between it and another car for the purpose of uncoupling the cars or separating the air-brake hose. Just as he stepped between the cars the train was started up, to use the language of one of the witnesses, "in a kind of rush." Deceased fell and the front trucks of one of the cars ran over him. He fell near the apex of the track rail and the guard rail and when found his right foot and leg were so tightly pressed down between the two rails that the spikes had to be withdrawn from the guard rail and the rail pushed back with a crowbar before his foot and leg could be extricated, both of which were badly crushed and his right side, from his hip to his shoulder, was split or cut open. There was no blocking between the guard and track rail, and plaintiff's evidence tends to show that blocking was a safety appliance commonly used on railroads, and served to prevent a switchman's foot from becoming wedged in between the two rails when stepping in between cars at such points; that where this blocking was used the foot could not go down between the rails and become fastened, and where there was no blocking the foot would go down between the rails and become wedged between them. The evidence is that the air-brake hose should be detached before the cars are uncoupled.

On the part of the defendant, the evidence tends to show that the cars between which plaintiff stepped were equipped with automatic brakes in good working order; that they were worked by levers extending to the outer edge of the cars and it was not necessary to go between them to uncouple the cars as they could be uncoupled from the outside by using the levers. Defendant's evidence also shows that it had a book of rules for the guidance of its employees; that the deceased had a copy of this book in his possession which was put in his hands when he entered the service of the company, and when he was employed he signed a written agreement to keep and observe these rules. Rule No. 742 reads as follows:

"Employees must not go between cars in motion to couple or uncouple them, or to follow other dangerous practices. Under no circumstances must they stand on the track and attempt to get on cars or engines approaching them."

Defendant's evidence also tends to show that the use of frog blocks are impracticable on its roads. The road is built through a mountainous country, where sand storms prevail on the eastern end and heavy snow storms on the western end, and defendant is compelled to use steel brooms to clear its switches; if blocking was used the brooms could not take out the sand and snow that would pack in between the block and the rail which would cause derailment of trains. Defendant's evidence further tends to show that switch blocks are not used on any of the western roads, and on not over twenty-five per cent of all the roads in the United States. Experienced railroad managers, superintendents and operators testified for defendant that switches were safer without than with blocking and that blocking had disappeared on about all the western roads except at points where it was required by law to be put in. The evidence shows that it is necessary to go between the cars to separate the air-brake hose, and that this separation is usually made while the train is standing still and before any switching is done.

BLAND, P. J. (after stating the facts).—1. The first question presented for decision is whether or not the court erred in leaving it to the jury to find whether or not the defendant was negligent in failing to block the guard rail in its yards where the deceased was run over and killed. The rulings of the Federal courts are to the effect that, as railroad companies are charged with negligence if they block their guard rails, because employees are liable to stub their toes and fall over the blocks, and they are charged with negligence if they fail to block them, because employees are liable to put

their feet between the rails and get them caught, to their injury, "the railroad companies are at liberty to determine for themselves, in the light of their experience, which form of frog is preferable, so long as both forms are in common use, and that it is not competent for a jury to hold a railroad company guilty of negligence because it adopts one form of frog in preference to another." [Gilbert v. Railroad, 128 Fed. l. c. 513; Kilpatrick v. Railroad, 131 Fed. 11; Southern Pacific Company v. Seley, 152 U. S. l. c. 154; McManus v. Oregon Short Line, No. 4973, opinion by ADAMS, judge Eighth Federal Circuit, who nonsuited the plaintiff on the same evidence as is in the record before us.]

In Lake Shore & Michigan Southern R. R. Co. v. McCormick, 74 Ind. 440, it was held the employee assumed the risk of unblocked frogs, if he knew they were unblocked and went between the cars contrary to the rules of the company to perform a service that might have been performed as well without going between the cars.

Numerous authorities might be cited holding that where there is a safe and an unsafe way open to a servant to perform a particular duty and he chooses the unsafe way and is injured, he will be deemed guilty of contributory negligence as a matter of law.

In Titus v. Railroad, 136 Pa. St. l. c. 626, MITCHELL, J., writing the opinion of the court, said: "All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for, in regard to the style of implement or nature of the mode of performance of any work, 'reasonably safe' means safe according to the usages, habits, and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger but of negligence; and the unbending test of negligence in methods, machinery, and

appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall, in effect, dictate the customs or control the business of the community." This case is approvingly cited in Rees v. Hershey, 163 Pa. St. 253.

Some of the state legislatures have enacted statutes requiring the blocking of frogs at terminal and other railroad yards. Our Legislature passed an act (sec. 1123, R. S. 1899) in 1891, requiring all railroad companies in this State "to adopt, put in use and maintain the best known appliances or inventions to fill or block all switches, frogs and guard rails on their roads, in all yards, divisional, and terminal stations, and where trains are made up, to prevent as far as possible the feet of employees or other persons from being caught therein."

In Huhn v. Railroad, 92 Mo. 440 (1887), 4 S. W. 937, the plaintiff's husband had been the defendant railroad company's yardmaster at Independence, Missouri, for three or four months. In stepping in between two cars to uncouple them, he put one of his feet into an unblocked frog where it became fastened and he was run over and killed. The allegation of negligence was the failure of the company to block the frog. The trial court gave the following instruction:

"Before the plaintiff can recover in this action, it must appear that the accident, resulting in the death of Charles Huhn, was occasioned by the want of ordinary care on the part of the defendant railroad company in

protecting its employees, in that it failed to block the track and guard rail at the point complained of, and that, by reason thereof, the said Huhn was killed, in the manner charged in the petition; and further, it must appear that the injury was not occasioned by the carelessness and negligence of said Huhn, which directly contributed to said injury.  The ordinary care demanded of the railway company is that degree of care which ordinarily prudent men, in operating railroads, would, and do generally exercise, under similar circumstances, towards the protection of their employees; and as to whether or not Charles Huhn was guilty of contributory negligence, resulting in his death, it is your duty to consider what knowledge he had of the absence of a block to the said guard rail, and, if he had knowledge thereof, whether, at the time, he was acting as a prudent man would under similar circumstances."

The judgment was for plaintiff.  On appeal the Supreme Court approved the instruction and affirmed the judgment.

In Alcorn v. Railroad, 108 Mo. 81, 18 S. W. 188, a majority of the court held whether it was or was not negligence in a railroad company not to block its guard rails, was a question for the jury.

In the recent case of Smith v. Fordyce, 190 Mo. 1. c. 24-5, GANTT, J., in respect to the duties of railroad companies toward their employees, said:  "The rule is well settled in this State that there is no obligation on the part of the master to furnish absolutely safe appliances, nor is a railroad bound to adopt every new invention, though an actual improvement it may be, but it is the duty of the company to use reasonable care and precaution in procuring and keeping its appliances in good condition and order, and it cannot remain wholly indifferent to the improvements of the day.  [Huhn v. Railroad, 92 Mo. 440; Hamilton v. Coal Co., 108 Mo. 364, 18 S. W. 977.]"

The laws of the State of Idaho (if it has any) in

regard to blocking guard rails, were not offered in evidence. The United States acquired territory, out of which the State of Idaho was carved, from Spain, by the treaty of February 22, 1819, promulgated February 22, 1821, between the United States and the King of Spain, hence Idaho was never subject to the laws of England, and the presumption cannot be indulged that the common law is in force in that State; and, in the absence of proof of its laws, we must apply the laws of this State in determining whether or not it was proper to submit to the jury to find whether the defendant was or was not negligent in failing to block its guard rails. [Flato v. Mulhall, 72 Mo. 522; McDonald v. Life Assn., 154 Mo. 618, 55 S. W. 999; Hurley v. Railroad, 57 Mo. App. 675; Witascheck v. Glass, 46 Mo. App. l. c. 215.] Plaintiff offered some evidence tending to show that it was common practice for railroad companies to block their frogs in switch and terminal yards, and that it was negligence in the defendant to leave its guard rails unblocked at such points; and, although the preponderance of the evidence was the other way, it was nevertheless the duty of the court to submit the issue to the jury for determination, under the rule of practice in this State, to the effect that, where there is any substantial evidence, though slight, whether direct or inferential, tending to establish matters in issue, the issue must be submitted to the jury. [Knapp v. Hanley, 108 Mo. App. 353, 83 S. W. 1005; Tapley v. Herman, 95 Mo. App. 537, 69 S. W. 482; Baird v. Railway, 146 Mo. 265, 48 S. W. 78; Gannon v. Gas Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907.] And we conclude that the court did not err in refusing to grant plaintiff's instruction in the nature of a demurrer to the evidence offered at the close of all the evidence.

2. It is insisted that the evidence conclusively shows that the deceased was guilty of contributory negligence. If he went between the cars to uncouple them, then he

was guilty of contributory negligence as a matter of law for having chosen a dangerous way to discharge this duty, when he could have performed it in a safe way, to-wit, by using the lever to uncouple the cars. It does not conclusively appear that deceased went between the cars for the purpose of uncoupling them. The air-brake hose could only be detached by going in between the cars, and they were found detached after the deceased was run over. Defendant's evidence is that the proper time to detach these hose is when the train is standing still and before it begins to switch. But it is not shown that this was done on the occasion the deceased was killed. He had been working in the yards for several months and therefore knew that it was necessary that the hose should be detached, and as it was not necessary to go between the cars to uncouple them, the reasonable inference is that he stepped between them for the purpose of detaching the air-brake hose; and we think the instructions given properly left it to the jury to find from all the facts and circumstances in evidence the purpose for which the deceased stepped between the cars.

3. Under the laws of this State, deceased did not assume the risk of going in between the cars, if it was necessary for him to do so in the performance of any duty he owed the railroad company, his employer; nor was he guilty of contributory negligence as a matter of law, unless the danger was so obvious and glaring that a prudent man would not have undertaken to perform the service. [Blundell v. Mfg. Co., 189 Mo. l. c. 559, 88 S. W. 103.] The absence of blocking between the guard and track rail was not such a danger.

4. Since the case was appealed, John Kelly McManus has departed this life. His death does not abate the suit. It may be continued by the surviving plaintiff under the provisions of sections 858, 859, Revised Statutes 1899. [Prior v. Kiso, 96 Mo. 313, 9 S. W. 898.]

5. The act of Congress regulating interstate commerce has no application whatever to the facts in this

case, and we think the instructions given the jury fairly submitted all the issues in the case, and properly declared the law as announced by the Supreme Court of this State.

Discovering no reversible error in the record, the judgment is affirmed. All concur.