J. L. COY, Respondent, v. ST. LOUIS and SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, December 14, 1914.

1. **CARRIERS: Damages to Goods Shipped: Statement.** Action against carrier for damages on account of alleged negligence in handling two cars of watermelons in transit. Statement of case.

2. **CAUSES OF ACTION: Only One from Single Wrongful Act: Not to be Separated in Parts.** Only one cause of action arises from a single wrongful act. Such cause of action cannot to split up and various suits brought for different items of damage.

3. ————: Only One for Single Wrongful Act: Exception. The only exception to the rule that "one shall not be twice vexed for the same cause" is found in the case of unavoidable ignorance of the full extent of the wrongs or injuries received.

4. EVIDENCE: Pleadings and Judgment of Sister State: Admitted by Constitutional Provisions in Every State. By Art. 4, Sec. I, Constitution of U. S., the pleadings and judgment· in a suit in a court of a sister State, duly authenticated, are admissible in evidence in the courts of every State.

5. CARRIERS: Injuries to Shipment: To Person Accompanying: Transitory Actions. An action against a carrier for damages to goods shipped and to the person who accompaines them at the time, both grow out of the same tort and are both common-law actions for negligence. They are· transitory actions and may be brought wherever . the defendant may be found and jurisdiction over it obtained.

6. NEGLIGENCE: Law of Place of Tort. In a transitory common-law action for negligence the law of the place where the tort was committed governs.

7. ARKANSAS: Acts of Congress Relating to: Statutory Provisions. Various acts of congress and territorial laws of Missouri relating to the territory now embraced within the State of Arkansas which was formerly a part of the territory of Missouri, considered.

8. JUDICIAL NOTICE: Common Law in Arkansas: Congressional Provisions. Because of the various acts of congress as above, judicial notice is taken of the fact that the common law is in force in Arkansas.

9. COMMON LAW: In Force Where: Presumptions. The presumption that the common law is not in force in a State will be indulged in, only as to those States which were never subject to the common law.

10. CARRIERS: Negligence In Shipment: Law of Place. In an action against a carrier for negligence, where the negligence complained of occurred in Missouri, the laws of Missouri govern the rights and liabilities of the parties.

11. ————: Negligence: Injuries to Persons and Property: Splitting Action. Plaintiff made a shipment of melons on defendant's road, accompanying same. By negligence of defendant plaintiff was injured and the melons damaged. Judgment was had in Arkansas against the carrier for personal injuries. He may not now· split his cause of action and maintain an action in Missouri for damages to the melons.

Appeal from Dunklin County Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED.

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellant.

(1) A single wrongful act gives only one cause of action, no matter how numerous the items of damage may be, and the damages resulting from one and the same tort must be assessed and recovered in one suit. Pucket v. Railroad, 25 Mo. App. 650; Steiglider v. Railroad, 38 Mo. App. 511; Bank v. Tracey, 141 Mo. 259; Stickford v. St. Louis, 75 Mo. 309; Cook v. Globe Printing Co., 227 Mo. 524; 1 Enc. Pl. & Pr., p. 159. (2) A single cause of action cannot be split up so as to make different causes of action; and since plaintiff had instituted a suit in Arkansas on one item of damage arising from the alleged wrongful act, the subsequent suit (the case at bar) instituted in Missouri on some other item of damage arising from the same wrongful act is barred. Railroad v. Traube, 59 Mo. 362; Wagner v. Jacoby, 26 Mo. 532; Mateer v. Railroad, 105 Mo. 355; Spratt v. Early, 199 Mo. 501; Bircher v. Boemler, 204 Mo. 562; Puckett v. Annuity Ass'n, 134 Mo. App. 506; Bank v. Tracy, 141 Mo. 258; Donnell v. Wright, 147 Mo. 647. (3) It has been held by the Supreme Court of Missouri that, in the absence of any showing to the contrary, it will be presumed that the common law prevails in a sister State. State v. Clay, 100 Mo. 579-581; Burdict v. Railroad, 123 Mo. 230. (4) It is only in respect to those States which were never subject to the common law that the courts will not indulge the presumption, and, in the absence of proof, apply the statute laws of the forum. White v. Shaney, 20 Mo. App. 389; Flato v. Mulhall, 72 Mo. 522 (Texas); Sloan v. Torry, 78 Mo. 623 (Louisiana); Hurley v.

· Railroad, 57 Mo. App. 675 (Texas); Crone v. Dawson, 19 Mo. App. 220 (Illinois).

*R. J. Smith* and *J. L. Fort* for respondent.

(1) The plea in bar must be decided according to the laws of Arkansas and not according to the laws of Missouri. The judgment of a court of one State, when introduced in evidence jn another State, is entitled to receive the same faith, credit and respect that is accorded to it in the. State where rendered, so if valid and conclusive there, it is so in all other States. But a judgment from another State is entitled to no greater effect or finality than would be accorded to it in the State where rendered; and hence if it would be there inconclusive, impeachable or re-examinable, it will receive no greater consideration or measure of finality in other States. Peet v. Hatcher, 112 Ala. 514; Wood v. Watkinson, 17 Conn. 500; Newman v. Bank, 92 Ill. App. 638; Cox v. Ahlefeldt, 105 La. 543; Wernwag v. Pawling, 25 Am. Dec. 317; Jaster v. Currie, 94 N. W. Rep. 995; Bowersox v. Gitt, 12 Pa. Co. Ct. 81; Babcock v. Marshall, 50 S. W. Rep. 728; Danville v. Cunningham, 48 Fed. 510; Brown v. Parker, 28 Wis. 21; Matoon v. Clapp, 8 Ohio, 248; Ball v. Warrington, 108 Fed. 472; Jacobs v. Marks, 182 U. S. 583; Chapman v. Chapman, 48 Kan. 636. (2) The courts of this State cannot presume that the common law is in force in Arkansas. Clark v. Barnes, 58 Mo. App. 667. (3) Distinct causes of action capable of being sued. on separately and successively may arise from one and the same tortious act in favor of the same plaintiff, as where damages to goods and injuries to the person are caused by the same negligent or wrongful act. Watson v. Co., 27 S. W. Rep. 924; Och v. Co., 80 Atl. Rep. 495; Borum v. Taylor, 19 Conn. 122; 23 Cyc. 1191; Brunsden v. Humphrey, 14 Q. B. Div. 149.

FARRINGTON, J.—The plaintiff recovered a · judgment for $492 as damages sustained by him occasioned by the alleged negligence of the defendant in handling two cars of watermelons while being switched by defendant in its yards at Chaffee, Mo., on August 17, 1912. The facts are that plaintiff was shipping two carloads of watermelons over defendant's railroad and was accompanying them in person, and while the cars were being switched they were run against some other cars with such force as to break, bruise and greatly damage the watermelons. Plaintiff also sustained injuries to his person in the collision.

It appears that plaintiff, prior to the commencement of this suit, instituted a suit against this defendant in the circuit court of Crawford county, Arkansas, wherein he recovered a judgment for $18,000 for his physical injuries. The injuries to his person, for which he recovered the judgment in Arkansas, and the damage to his melons—the subject of this action—were occasioned by the same alleged negligent and wrongful act of the defendant in kicking its cars together at the time and place mentioned. The plaintiff on cross-examination admitted he had recovered the judgment in Arkansas for his personal injuries caused by this collision and the defendant introduced in evidence a copy of the pleadings and the judgment rendered in the Arkansas case.

If the judgment for $18,000 had been rendered in Missouri, there is no doubt that it would be a bar to the present action because a single wrongful act gives rise to only one cause of action on which there can be but one recovery, regardless of the numerous items of damage that may have been suffered—the damages resulting from one and the same tort must be assessed and recovered in one action; the cause of action cannot be split up and various suits brought for the different items of damage where such items grew out of one wrong. [Steiglider v. Railway Co., 38 Mo. App. 511;

Wheeling Savings Bank v. Tracey, 141 Mo. l. c. 259, 42 S. W. 946; Mateer v. Railway Co., 105 Mo. 320, 355, 16 S. W. 839; Stickford v. City of St. Louis, 75 Mo. 309, approving Stickford v. City of St. Louis, 7 Mo. App. 217; Pucket v. Railway Co., 25 Mo. App. 650; Cook v. Globe Printing Co., 227 Mo. l. c. 524, 127 S. W. 332; Union Railroad and Transportation Co. v. Traube, 59 Mo. l. c. 362; Puckett v. National Annuity Ass'n, 134 Mo. App. l. c. 506, 114 S. W. 1039; Spratt v. Early, 199 Mo. l. c. 501, 97 S. W. 925; and Bircher v. Boemler, 204 Mo. l. c. 562, 103 S. W. 40.] The reason given in these cases for this rule is that "one shall not be twice vexed for one and the same cause." The only exception to this rule as appears in these decisions is that found in the case of Wheeler Savings Bank v. Tracey, 141 Mo. l. c. 259, 42 S. W. 946, which is that unavoidable ignorance of the full extent of the wrongs received or injuries will relax the rule. In the case under consideration the plaintiff was fully advised of the injury (not only to himself for which he procured a judgment in Arkansas) sued for herein when he instituted and recovered his judgment for this tort in Arkansas.

The pleadings and judgment in the Arkansas suit were properly introduced in evidence by the defendant, duly authenticated, under the acts of Congress. It was said in the case of Western Assurance Co. v. Walden, 238 Mo. l. c. 61, 62, 141 S. W. 595:

"The record in this case discloses the facts that said judgment and transcript were duly authenticated according to the act of Congress governing such matters; also shows that the circuit court of Cook county, Illinois, is a court of record, and has a judge presiding, a clerk attending upon the same, as well as a seal of court. Upon that state of facts the law presumes that such a court is a court of general jurisdiction and that it had jurisdiction of the subject-matter of the action pending therein, and of the parties thereto;

and in the absence of proof to the contrary such presumption is conclusive. (Cases cited.)

"Section I of article IV of the Constitution of the United States provides that 'full faith and credit shall be given is every State to the public acts, records and judicial proceedings of every other State.' Full faith and credit cannot be given to judgments and judicial proceedings of another State, by the courts of this, except where those matters are called to the court's attention, and that can only be done in such a case by offering or introducing them in evidence."

Respondent, however, contends that *splitting a cause of action* is a common law, not a statutory defense, relying upon the case of Clark v. Barnes, 58 Mo. App. 667, holding that the courts of Missouri cannot presume that the common law is in force in Arkansas, and that in those cases in which our courts will not presume that the common law is in force in a sister State, they will, in the absence of pleading or proof, presume. that the statute law of that State is like the statute law of this, citing McManus v. Railroad, 118 Mo. App. 152, 94 S. W. 743. Respondent argues from this that as the rule against splitting causes of action is a defense under the common law and is not a statutory rule in Missouri, there being a failure on the part of appellant to prove that Arkansas is a common law State, it could not rely on the rule against splitting, as stated, under the common law, and that as there is no statute in Missouri against splitting causes of action, our courts cannot hold, in the absence of proof, that there is a statute in Arkansas which prevents splitting.

The action in the circuit court of Crawford county, Arkansas, for the personal injuries and the present action for damages are both common law actions for negligence, both growing out of the same tort; they are therefore transitory and could be brought wherever the defendant might be found and jurisdiction over it

obtained. [22 Am. and Eng. Ency. Law (2 Ed.), 1378.] The Missouri courts have in a number of cases held that in a transitory common law action for negligence the law of the place where the tort was committed governs. In the case of Root v. Railway, 195 Mo. l. c. 370, 92 S. W. 621, the following language was used: "And, furthermore, it seems to be settled law that in a transitory common law action, where suit is brought in a State other than where the injury happened, the interpretation of the common law obtaining in the State where the cause of action accrued, the *lex loci,* will govern." [See, also, Fogarty v. Transfer Co., 180 Mo. l. c. 502, 79 S. W. 664; Williams v. Railroad, 106 Mo. App. l. c. 63, 79 S. W. 1167; and Chandler v. Railroad, 127 Mo. App. l. c. 41, 106 S. W. 553.]

Counsel for appellant have met the contention and show that the common law of England was extended over the territory now embraced within the State of Arkansas when such territory was a part of the Territory of Missouri. In their reply brief is set out the various acts of Congress and territorial laws of Missouri relating to the territory now embraced within the State of Arkansas, and we adopt that part of their brief:

To the above rules, in the main, and as general propositions, we agree; but we do not concede that respondent's conclusion therefrom, as respects the State of Arkansas, is correct, for the reason that that State was originally a part of the territory of Missouri, and was such when it was organized as a territory on March 2, 1819. [3 U. S. Stat. at Large, p. 493.] The common law was adopted in Missouri on January 19, 1816. [Territorial Laws of Mo., p. 436.] The common law, therefore, had been adopted by Missouri Territory, and it applied to all the territory which now composes the State of Arkansas, three years before the organization of "Arkansaw Territory," because Arkansas was then a part of Missouri Territory.

Section 10 of the Act of Congress organizing a territorial government for Arkansas provides: "Sec. 10. That all the laws which shall be in force in the Territory of Missouri on the fourth day of July next, not inconsistent with the provisions of this Act, and which shall be applicable to the Territory of 'Arkansaw,' shall be and continue in force in the latter Territory until modified or repealed by the legislative authority thereof." [Act Cong. March 2, 1819, 3 U. S. Stats. at Large, 493.]

A brief summary of the various laws in the early period of the history of the Louisiana Accession will not be out of place here, since it will serve to explain the advent of the common law in that part of the Louisiana Purchase not embraced within the limits of the then Territory of Orleans, but embraced within all that portion of the Accession north of the thirty-third degree of north latitude.

By an Act of Congress, entitled, "An Act erecting Louisiana into two territories and providing for the temporary government thereof" approved March 26, 1804, it was provided:

"That all that portion of country ceded by France to the United States, under the name of Louisiana, which lies south of the Mississippi territory, and of an east and west line to commence on the Mississippi River at the thirty-third degree of north latitude, and to extend west to the western boundary of said cession, shall constitute a territory of the United States under the name of the Territory of Orleans.

"Sec. 12. The residue of the Province of Louisiana ceded to the United States shall be called the District of Louisiana." [1 Territorial Laws of Mo., p. 5; 2 U. S. Stats. at Large, p. 283.]

Afterwards, by an Act of Congress entitled "An act further providing for the government of the District of Louisiana" approved March 3, 1805, the name was changed from "District of Louisiana," to "Ter-

ritory of Louisiana." Section 1 of this Act provided: "That all that part of the country ceded by France to the United States, under the general name of Louisiana, which by an Act of the last session of Congress was erected into a separate district, to be called the District of Louisiana, shall henceforth be known and designated by the name and title of the Territory of Louisiana." [1 Territorial Laws of Mo., pp. 6, 7.]

By section 1 of the Act of Congress entitled, "An act for the admission of the State of Louisiana into the Union and to extend the laws of the United States to the said State," approved April 8, 1812, it was provided:

"Whereas, the representatives of the people of all that part of the territory or country ceded, under the name of 'Louisiana,' by the treaty made at Paris on the thirtieth day of April, one thousand eight hundred and three, between the United States and France, contained within the following limits, that is to say: Beginning at the mouth of the River Sabine; thence, by a line to be drawn along the middle of said river, including all islands, to the thirty-second degree of latitude; thence due north to the northernmost part of the thirty-third degree of north latitude; thence along the said parallel of latitude to the River Mississippi; thence down the said river to the River Iberville; and from thence, along the middle of said river, and Lakes Maurepas and Porchartrain, to the Gulf of Mexico; thence bounded by the said gulf, to the place of beginning, including all islands within three leagues of the coast; did, on the twenty-second day of January, one thousand eight hundred and twelve, form for themselves a Constitution and State Government, and give to the said State the name of the State of Louisiana, in pursuance of an Act of Congress entitled, 'An Act to enable the people of the Territory of Orleans to form a Constitution and State Government, and for the ad-

mission of the said State into the Union, on an equal footing with the original States, and for other purposes.' And the said Constitution having been transmitted to Congress, and by them being hereby approved, therefore be it enacted that the said State shall be one of the United States, and admitted into the Union," etc. [2 U. S. Stats. at Large, p. 701.]

This Act of Congress made the thirty-third degree of north latitude the northern boundary of the State of Louisiana, the same as the Act of Congress organizing the District of Louisiana made that parallel of latitude the southern boundary line of that District.

Afterwards, by an Act of Congress, entitled "An Act providing for the government of the Territory of Missouri," approved June 4, 1812, the name of the Territory was changed from Louisiana to Missouri. Section 1 of that Act provided: "That the Territory heretofore called Louisiana shall hereafter be called Missouri." [1 Territorial Laws of Mo., p. 9.]

The Governor and Judges of the Territory of Louisiana, by an act passed June 27, 1806, created a district out of the southwestern part of the District of New Madrid, and named it the "District of Arkansaw." [1 Territorial Laws of Mo., p. 68.] This law was repealed by an Act of the Territorial Legislature, approved July 7, 1807, and the jurisdiction of the Court of Common Pleas of New Madrid District was extended over the territory formerly composing the "District of Arkansaw." [1 Territorial Laws of Mo., p. 179.]

By an Act of the Legislature of the Territory of Missouri, approved December 31, 1813, the Territory of Missouri was divided into counties, and Arkansaw County was created out of a portion of New Madrid and extended south to the thirty-third degree of north latitude, or the "northern boundary line of the State of Louisiana." [1 Territorial Laws of Mo., pp. 293, 294.]

By an act of the same Legislature, approved December 15, 1818, Arkansas county was divided into three separate counties. [1 Territorial Laws of Mo., pp. 589, 591.]

By an act of the Legislature of the Missouri Territory, approved January 19, 1816, the common law of England, etc., was adopted as before stated. [1 Territorial Laws of Mo., p. 436.]

This law is substantially the same now in both the States of Missouri and Arkansas as when adopted, and when it was so adopted it applied to the entire Territory of Missouri, which Territory then embraced all of the Louisiana Accession north of the thirty-third parallel of latitude.

By an Act of Congress entitled, "An Act establishing a separate territorial government in the southern part of the Territory of Missouri," approved March 2, 1819, the Territory of "Arkansaw" was created. Sections 1 and 10 of this Act provided:

"Sec. 1. That from and after the fourth day of July next, all that part of the Territory of Missouri which lies south of a line beginning on the Mississippi River at thirty-six degrees north latitude, running thence west to the River St. Francois; thence up the same to thirty-six degrees thirty minutes north latitude, and thence west to the western territorial boundary line, shall, for the purposes of a territorial government, constitute a separate territory, and be called 'Arkansaw Territory.'"

"Sec. 10. That all the laws which shall be in force in the Territory of Missouri on the Fourth day of July next, not inconsistent with the provisions of this Act, and which shall be applicable to the Territory of 'Arkansaw,' shall be, and continue, in force in the latter Territory until modified or repealed by the legislative authority thereof." [3 U. S. Stats. at Large, p. 493.]

Coy v. Railroad.

We must therefore hold that we will take judicial notice that the common law was once extended over the territory now embraced within the State of Arkansas, and the presumption must necessarily be, in the absence of proof, that it continues in force.

The law of this State is that it is only in those States which were never subject to the common law that our courts will not indulge the presumption that the common law is not in force. [See, Flato, v. Mulhall, 72 Mo. 522; Sloan v. Torry, 78 Mo. 623; White v. Chaney, 20 Mo. App. 389; Hurley v. Railway Co., 57 Mo. App. 675; Crone v. Dawson, 19 Mo. App. 1. c. 220, 221.] There is a long line of cases in this State cited by appellant holding that in territory over which the common law once prevailed, the presumption, in the absence of proof, is that it is still in force.

With reference to the case of Clark v. Barnes, 58 Mo. App. 667, we can find nothing from reading the opinion showing that the attention of the court was called to the territorial laws governing the territory now embraced within the State of Arkansas. We cannot, therefore, agree with the conclusion in that case that the courts of this State cannot presume that the common law is in force in Arkansas.

On the other hand, the wrong having been committed in Missouri, the law of this State relative to the rights and liabilities should govern, regardless of where the plaintiff chose to file his suit.

The judgment is reversed. *Robertson, P. J.,* and *Sturgis, J.,* concur.