## STATE NATIONAL BANK OF SHAWNEE, Respondent, v. HUGO LEVY, Appellant.

### Kansas City Court of Appeals, February 7, 1910.

1. **PLEADING: Foreign Statute.** In pleading the statute of a sister state it is not enough on the one hand merely to recite its section number nor is it necessary on the other hand to set the statute out in full. A statement of its purport is sufficient.

2. **EVIDENCE: Foreign Statute: Session Acts.** A book purporting to be the printed Session Laws of a sister state is *prima facie* evidence of the existence of such laws; and this is true even if the volume does not purport to be published by authority of such state.

3. **PLEADING: Evidence: Law of Sister State: Presumption.** In the absence of pleading and proof the law of a sister state is presumed to be the same as our own.

4. **EVIDENCE: Hearsay: Report of Legislative Investigating Committee: Bills and Notes.** A finding of facts by a committee of the United States Senate, is mere hearsay evidence of such facts so found; and where a defense is asserted on the ground that the note sued on was tainted with fraud and this defense is established only by such evidence, the trial court properly directed a verdict for plaintiff.

5. **"EVIDENCE STATUTE, EFFECT OF."** Chapter 25, Revised Statutes 1899, dealing with the subject of the evidentiary character of the acts of various public bodies and officials does not profess to make competent evidence of that which before was incompetent.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*Eppstein, Ulmann & Miller* for appellant.

(1)   Defendant's instruction in the nature of a demurrer at the close of all of the evidence should have been sustained for the reason that the plaintiff had failed to properly plead or prove the statutes of another State, and the note on its face is void for the reason that it calls for twelve per cent interest.   Clark v. Barns, 58 Mo. App. 667; Hatch v. Hanson, 46 Mo. App. 330; Lee v. Railroad, 195 Mo. 400.   (2)   The laws of another State cannot be pleaded by chapter only.   The terms, tenor or effect of the statute are to be set out, and unless this is done it cannot be read as a defense to a suit.   McDonald v. Insurance Co., 154 Mo. 618.   (3) A note given upon false representation made by agent of defendant whether intentionally made to deceive or not should be cancelled.   Beland v. Brewing Ass'n, 157 Mo. 593.   (4)   All contracts connected with the performance of an action forbidden by the statute are void and unenforcible.   Tandy v. Commission Co., 113 Mo. App. 409.   (5)   Signature of indorser of note secured by maker of note through fraud and in the presence of an agent of the payee, who was an agent of the bank, it was held that the payee could not recover from the indorser.   Bank v. Schnur, 57 Mo. App. 177; Bank v. Wells, 98 Mo. App. 579.   (6)   An Act of Congress makes it a misdemeanor to maintain fence, etc., and Missouri courts must recognize such statute the same as it would a State statute.   Tandy v. Commission Co., 113 Mo. App. 409.   (7)   All courts, State and national, must take judicial notice of and be governed by a treaty of the United States as a law of the land.   Book 4, L. R. A. 1889, in footnotes, page 39; U. S. v. Rauscher, 119 U. S. 407, 30 L. Ed. 425; U. S. v. The Peggy, 5 U. S. 1 Cranch, 103, 2 L. Ed. 49; LaCroix v. Sarrazin, 15 Fed. 489; Carson v. Smith, 5 Minn. 78.

*Thomson, Stanley & Price* for respondent.

(1)   The defendant, Hugo Levy's first assignment of error is that the court erred in refusing to give the defendant's instruction in the nature of a demurrer because the plaintiff failed to properly plead and prove the statutes of another State.   A long line of decisions in Missouri hold as follows:   That the laws of a foreign State are not properly pleaded when referred to by number only, but should be pleaded by setting out its terms, tenor and effect.   McDonald v. Insurance Co., 154 Mo. 618; Lee v. Railroad, 195 Mo. 400.   (2)   The report of a sub-committee of the committees on Indian affairs of the United States Senate, could not be received in evidence to bind the plaintiff in this case. Julian v. The Kansas City Star, 209 Mo. 89.   (3) The law is well settled in this State that even if the evidence is proper the ruling of the court cannot be reviewed on appeal without the excluded evidence or a summary of it before the appellate court for without it, it is impossible to determine whether it was material to any issue.   115 Mo. App. 685; 156 Mo. 148; 94 Mo. App. 307, and authorities there cited.

JOHNSON, J.—Plaintiff, an incorporated bank doing business in Shawnee, Oklahoma, brought suit in the circuit court of Jackson county against John Garrett, Charles McKnight and Hugo Levy on a promissory note.   Garrett and McKnight were not served with summons and at the commencement of the trial were dismissed from the suit and the trial proceeded against the remaining defendant, Levy, resulting in a verdict directed against him for the principal of the note and accrued interest.   After unsuccessfully moving for a new trial and in arrest of judgment, he brought the case here by appeal.

The note in controversy was executed and delivered by the defendants in Shawnee, Oklahoma, where it was made payable.   It is negotiable in form, is dated

December 17, 1906, and by its terms, defendants, whose signatures appear on the face, promise to pay to the order of plaintiff, thirty days after date, the sum of $1,500, with interest from maturity at the rate of twelve per cent per annum. Defendant Levy admits in his answer that he signed the note, but alleges that he signed as surety for his co-makers, Garrett and Mc-Knight; that plaintiff, through its cashier and agent, Willard T. Johnston, knew that he signed the note as surety, and that his signature was procured by means of a fraudulent and corrupt conspiracy between said Johnston, Garrett and McKnight. Plainly and briefly stated, the fraud Levy claims was practiced on him is as follows: Garrett and McKnight were the owners of several saloons in Shawnee and were customers of Levy, a wholesale liquor dealer at Kansas City. Representing that they desired to buy another saloon, Garrett and McKnight induced Levy to become surety on their note to the bank for $1,500, the amount of the represented purchase price. Instead of intending to use the money as represented, they proposed using it to defraud Kickapoo Indians out of their lands in violation of treaty rights and of Federal laws. Johnston not only was privy to this purpose and scheme, but inspired it. Acting for himself, he had already swindled the Indians out of large tracts of land of great value. Sometime after the note was executed, rumors of these and other Indian land frauds became current and Levy learned, for the first time, that Johnston, Garrett and McKnight were implicated. Investigation led to the discovery that the note in controversy had been used to procure funds for the perpetration of these frauds. Levy refused to pay the note and this suit followed. After hearing the evidence, the court peremptorily directed a verdict for plaintiff on the ground that the admission of Levy that he signed the note, coupled with his failure to adduce competent evidence in support of

his special defense, left no issue of fact in the case and entitled plaintiff to a verdict and judgment.

The first point argued in the brief of defendant is concerned with the fact that the note calls for interest at the rate of 12 per cent per annum, a higher rate than that allowed by the statutes of this State. It is conceded by defendant that the note is an Oklahoma contract and is to be governed by the laws of Oklahoma, but the rule is invoked that "where the cause of action stated or defense made rests upon the law of another State, that law should be both pleaded and proved," and that "in the absence of proof of the laws of such State, rights governed by them will be determined by our own law." [Clark v. Barnes, 58 Mo. App. 667.] And it is contended that the laws of Oklahoma on which must rest the right of plaintiff to contract for interest at the rate charged in the note are not sufficiently pleaded or proved.

The petition alleges "that said note was executed in Oklahoma and is payable there and is in accord with the laws of said territory in regard to interest and attorney fees. That the statutes of Oklahoma provide that the parties to a promissory note may contract therein for attorney fees to be paid by the payer; and the statutes further provide that interest not exceeding twelve per cent per annum may be provided for in promissory notes."

The laws of a sister State must be alleged and proved as any other issue of fact and the rule of pleading is that such laws are not sufficiently stated if they are referred to in the petition only by the number of the section or chapter. The substance of the law must be stated. [Lee v. Railway, 195 Mo. l. c., 415; McDonald v. Life Assn., 154 Mo. l. c. 628.] This does not mean, as defendant appears to think, that the statute must be copied in the petition, but that its tenor and effect must be pleaded. The averment under consideration does not state the substance of the statute and,

therefore, satisfies the requirements of good pleading. To prove the interest laws of Oklahoma in force at the time of the execution of the note, plaintiff offered in evidence the "Session Laws of 1897, page 106, containing chapter 18, of Oklahoma. It is a printed volume purporting to contain the session laws, also the authentication." The objection to the offer was overruled and the evidence admitted. There can be no question of its admissibility. The statute (sec. 3089, R. S. 1899), provides: "The printed volumes purporting to contain the laws of a sister State or territory shall be admitted as *prima facie* evidence of the statutes of such State or territory." Construing that section, we held in Frick Co. v. Marshall, 86 Mo. App. 463, that a book purporting to contain the laws of a State was admissible though it did not "purport to be published by authority of that State." Here the volume offered not only purported to contain the laws of Oklahoma, but also to have been published by authority of that State.

Coming now to the defense of fraud and conspiracy, we think the court was right in holding that defendant failed to produce substantial and competent evidence of that defense. There is evidence that Garrett told Levy the money was to be used in buying a saloon and that Johnston knew Levy's relation to the transaction was that of a surety, but there is no evidence that Johnston knew of the falsehood by which Levy was induced to sign the note and above all, there is no competent evidence that a fraudulent and unlawful use of the money was contemplated. The most that is shown is that Garrett and McKnight intended to use it in the purchase of Indian lands, but this does not tend to prove that they intended violating any laws or treaties of the Federal government. To show that they did, defendant offered in evidence three bulky printed volumes containing 2,500 pages of the proceedings of a "Sub-committee of the Committee of Indian Affairs United States Senate" in the matter of "the affairs of

the Mexican Kickapoo Indians." That subcommittee was appointed by the Committee on Indian Affairs, pursuant to the following resolution of the Senate:

"Resolved, That the Committee on Indian affairs of the Senate be, and it hereby is, authorized and directed to fully investigate the affairs of the Mexican Kickapoo Indians, and all affairs connected therewith, and that the said committee be empowered to send for persons and papers, and to subpoena witnesses and to administer oaths, and to sit during the sessions of the Senate; and said Committee shall make full and complete report, together with its recommendations, to the Senate. The necessary expenses of said investigation shall be paid out of the contingent funds of the Senate."

In its report, the subcommittee found "that the persons whom we have designated (among them Johnston) secured their said pretended title by acts of violence, corruption, fraud, intimidation and debauchery, and some by committing the crime of forgery and that they have no valid titles but the deeds they hold are such a cloud upon the title that it is the duty of the government to at once bring action to set the same aside."

The object of this offer was to prove a fraudulent intent on the part of Garrett and McKnight by proof of antecedent fraudulent practices of Johnston. Conceding for argument that the intent of the principals to the note, disclosed to plaintiff's cashier, to use the money for an unlawful purpose would, if proved, constitute a defense to the note, we cannot regard the document before us in any other light than as pure hearsay, so far as the issues of this case are concerned. Should we sanction the contention that the report of the committee should be regarded as a public act of the same evidentiary dignity as an Act of Congress or a treaty, it would not follow that it is admissible in the present case.

The statutes (chapter 25, R. S. 1899) dealing with

the subject of the evidentiary character of the acts of various public bodies and officials do not profess to make competent evidence of that which before was incompetent. [Julian v. Star Co., 209 Mo. l. c. 88.]

The Committee on Indian Affairs was directed by the Senate to investigate certain charges and rumors of fraud and to report its findings and conclusions. Its report was not an adjudication, nor was it conclusive of the facts found. It required the prosecution of suits in courts of competent jurisdiction to establish the fact that Johnston had secured titles to Indian lands by fraud, and we think it would not be contended that the document under consideration would be competent in such a suit. Much less is it competent to prove any issue in the present case, and it was properly excluded.

The judgment is affirmed. All concur.